**UNITED STATES of America**

v.

**Maria Gilma Gauira DIAZ, Appellant, a/k/a Maria Christina Marti Chaves,**

**and**

**Bernardo Giraldo Zuluaga.**

**No. 74–1330.**

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Aug. 22, 1974.

Decided Sept. 16, 1974.

Nicholas Trott Long, Philadelphia, Pa., for appellant.

Robert E. J. Curran, U.S. Atty., Walter S. Batty, Jr., Carmen C. Nasuti, Asst. U.S. Attys., Philadelphia, Pa., for appellee.

Before VAN DUSEN, WEIS and GARTH, Circuit Judges.

OPINION OF THE COURT

PER CURIAM:

Appellant challenges the March 11, 1974, judgment and commitment for

possession with intent to distribute and unlawful importation of cocaine in violation of 21 U.S.C. §§ 841, 952, and 955, contending that, at the time she was subjected to a border strip search, the customs authorities had insufficient suspicion to justify said search, so that the search was unreasonable and in violation of her rights guaranteed under the Fourteenth Amendment to the United States Constitution. In United States v. Beck, 483 F.2d 203, 207 (3d Cir. 1973), Judge Rosenn explained the "special, pragmatic standards for judging the legality of stops and searches in or around . . . border areas or international port facilities," as follows:

"Instead of the usual requirement of probable cause to believe that an individual possesses contraband or that he has committed a crime demanded by the Fourth Amendment, a customs officer need only have a reasonable suspicion of illegal activity. [Citing cases.] 'A customs officer has the unique power to stop a person at an international entry point to conduct a "border search" without having a search warrant and even having probable cause to believe the person has committed a crime.' [Citing case.] Recognition of this diminished constitutional standard is reflected in 19 U.S.C. § 482, specifically authorizing customs officers to stop and search vehicles or persons in or on which they suspect there is merchandise illegally brought into the United States. It does not, of course, exempt border searches from the constitutional test of reasonableness."

Based on the facts found in the district court opinion of March 11, 1974, and considering the totality of the circumstances in the record,[1] a "real suspicion" justifying a strip search was present in this case. See United States v. Guadalupe-Garza, 421 F.2d 876, 879 (9th Cir. 1970), where the court said:

"'Real suspicion' justifying the initiation of a strip search is subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law.

[1]. The objective facts on which the customs officials formed their real suspicion of smuggling were accurately summarized in the appellee's brief, pp. 9–10, as follows:

"1. The unusualness of a Latin American deboarding into the United States from an Air Jamaica flight;

"2. the strange disappearance of another Latin who had entered in the same fashion a short time earlier;

"3. the circuitous route of travel to reach the ultimate destination of New York for the purpose of simply visiting friends;

"4. the two one-way tickets in Zuluaga's coat pocket that were purchased in numerical sequence with the identical circuitous route;

"5. The denials by both Zuluaga and Diaz that they were traveling together;

"6. the large amounts of cash on each but the absence of a wallet or other form of identification other than their passports;

"7. the nervousness of Defendant's companion when questioned by the Customs Officials;

"8. the knowledge of the Customs Agents of the modus operandi of a man and woman smuggling team and how the actions of Zuluaga and Diaz fit this profile;

"9. the fact that Zuluaga was one of the first passengers to deboard and Diaz was one of the last despite all indications that they were traveling together;

"10. the small amount of luggage (one carry-on suitcase) that each had, the absence of warm clothing and the absence of trinkets for friends they allegedly were about to visit in New York;

"11. the Defendant's appearance of attempting to conceal her upper chest by leaning over the Immigration counter, crossing her arms in front of her chest and grabbing both sides of her coat and pulling them together; and

"12. the fact that Defendant's upper chest appeared overly large or bulky for a woman of her size and shape."

"The objective, articulable facts must bear some reasonable relationship to suspicion that something is concealed on the body of the person to be searched; otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment."

See also United States v. Glaziou, 402 F.2d 8, 12 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1968).

The March 11, 1974, judgment and commitment will be affirmed.