**UNITED STATES of America, Plaintiff,**

v.

**Mary Ann HIMMELWRIGHT, Defendant.**

**No. 75–523–CR–CA.**

United States District Court, S. D. Florida.

Dec. 31, 1975.

Robert W. Rust, U. S. Atty., Miami, Fla., and Charles Intriago, Asst. U. S. Atty., for the Government.

Asst. Federal Public Defender Michael Rosen, Miami, Fla., for defendant.

## ORDER DENYING SUPPRESSION

ATKINS, District Judge.

Defendant Mary Ann Himmelwright has moved to suppress as evidence cocaine found on her person on the ground that an unreasonable search in violation of the Fourth Amendment led to discovery of the contraband. This Court feels constrained by Fifth Circuit precedent to find the search was reasonable and therefore denies suppression.

### THE FACTS

On June 7, 1975 defendant Himmelwright arrived at Miami International Airport aboard a flight from Colombia. A routine search of her baggage produced nothing. Ms. Himmelwright declared a few items. She appeared calm, like a normal passenger, to the customs inspector.

When she left the customs inspector, two customs patrol officers stopped Ms. Himmelwright and requested her passport. The young woman had been absent from the country seven days. She was wearing slacks which revealed the contour of her body and platform shoes. Her demeanor was excessively calm in the eyes of the customs patrol officers and lacked the normal apprehensiveness of travelers. They asked her occupation and she replied secretary to an insurance company. The officers then requested Ms. Himmelwright to follow them to another area for inquiry.

When the customs patrol officers sought the name of the company for which Ms. Himmelwright worked, she changed her occupation from secretary to agent for a general insurance company and then later to broker. At this

point, the officer in charge told his partner to get two female customs inspectors. While waiting for the female inspectors, the remaining customs patrol officer commented to Ms. Himmelwright on the matchbooks in her purse. She replied that she worked as a cocktail waitress in a bar. It was following this response that the officer in charge decided to refer Ms. Himmelwright to the female customs inspectors for a strip search.

The two female customs inspectors and Ms. Himmelwright in the presence of no others, then entered a room referred to as the "secondary search" room. The defendant's platform shoes were handed out to be searched. Ms. Himmelwright was asked to remove her blouse. No contraband was visible and she replaced the blouse. She was next requested to remove her slacks and stand with her legs spread apart. She was not wearing undergarments. A female customs inspector crouched in front of Ms. Himmelwright and observed a ¼ inch tab extending from the defendant's vagina. The inspector asked Ms. Himmelwright what the tab was. She replied a tampax and then changed her answer to a tissue. The protruding object did not look like a tampax string nor a tissue to the female inspector. Ms. Himmelwright was requested to remove the object from her vagina. She withdrew six condoms containing contraband from the vaginal cavity. After removal of the condoms Ms. Himmelwright donned her slacks.

## THE LAW

■ It has long been recognized that the strictures of the Fourth Amendment against unreasonable searches and seizures are ameliorated for searches conducted at the national borders, as was the instant search. In consideration of the regulation of movement across the borders, customs officers may predicate searches on less than "probable cause." Border searches of luggage, vehicles or the outer garments of an individual are governed by the test of reasonable suspicion. *United States v. Chiarito,* 507 F.2d 1098 (5 Cir. 1975). The issue before this Court is against what standards of reasonableness must the strip search and subsequent body cavity search of Ms. Himmelwright be measured.

By 1970, the Ninth Circuit had a well developed body of case law on Fourth Amendment requirements for reasonable strip searches and body cavity searches. Under that line of authority, a strip search can be conducted if the customs official has a real suspicion, directed specifically to the person to be searched. The Court defined real suspicion as follows:

"Real suspicion" justifying the initiation of a strip search is subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purposes of transporting it into the United States contrary to law.

The objective, articulable facts must bear some reasonable relationship to suspicion that *something is concealed on the body of the person to be searched;* otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment. *United States v. Guadalupe-Garza,* 421 F.2d 876, 879 (9 Cir. 1970).

A review of the cases applying a real suspicion standard reveals that routinely among the objective articulable facts that lead the experienced customs official to suspect that a person is concealing contraband on his body is a visible signal on the person: needle marks on the defendant's arms *United States v. Mastberg,* 503 F.2d 465 (9 Cir. 1974); presence of a large amount of contraband in defendant's outer garments *United States v. Flores,* 477 F.2d 608 (1 Cir. 1973); and an overly large upper chest for a woman of the defendant's

size and shape *United States v. Diaz,* 503 F.2d 1025, 1026 fn. 1 (3 Cir. 1974).

The stricter standard of a clear indication or plain suggestion that contraband is concealed in a body cavity is required for the more intrusive body cavity search. *Rivas v. United States,* 368 F.2d 703, 710 (9 Cir. 1966) cert. denied 386 U.S. 945, 87 S.Ct. 980, 17 L.Ed.2d 875 (1967).

In *United States v. Briones,* 423 F.2d 742 (5 Cir. 1970) the Fifth Circuit wrote one of its earliest opinions regarding a body cavity search. The defendant contended that "mere suspicion" would not be sufficient justification for a warrantless border search of his stomach. After acknowledging the Ninth Circuit's requirement of a clear indication for body cavity searches at a border, the Fifth Circuit found it unnecessary to resolve whether the Fourth Amendment mandated a clear indication for body cavity searches or was satisfied by mere suspicion. The search in *Briones* was reasonable under either standard.

Three years later the Fifth Circuit in *United States v. Forbicetta,* 484 F.2d 645 (5 Cir. 1973) enunciated its standard of reasonableness for a warrantless border strip search. The requirements of the *Forbicetta* standard are difficult to discern. In its discussion of the facts, the *Forbicetta* Court indicated that "women discovered carrying cocaine on their persons usually wore loose-fitting dresses to conceal the bulkiness of the packages hidden beneath their clothing; usually when an official could not see the contours of a feminine figure under loose-fitting dresses, even when the subject was in a bending position, the wearer generally had something strapped to her waist . . . . She (Ms. Forbicetta) was wearing a loose-fitting dress. When she bent to pick up her suitcase, the dress revealed no contours of her figure." *Id.* at 646. This visual signal on the defendant's person in addition to the other facts set forth in *Forbicetta* would satisfy the real suspicion test for a reasonable search which requires objective articulable facts that lead the experienced customs official to suspect that a person is concealing contraband *on his body.*

Nevertheless, the Court ignored the Ninth Circuit opinions and analogized from its earlier decisions treating border searches of an auto trunk *United States v. Thompson,* 475 F.2d 1359 (5 Cir. 1973) (reasonable suspicion standard); an outer garment of an individual *United States v. Skipwith,* 482 F.2d 1272 (5 Cir. 1973) (mere suspicion); checked luggage, *United States v. Cyzewski,* 484 F.2d 509, 514 (5 Cir. 1973) (reasonable suspicion); a car trunk, *United States v. Maggard,* 451 F.2d 502, 504 (5 Cir. 1971) (reasonable suspicion); stomach, *United States v. Briones,* 423 F.2d 742 (5 Cir. 1970) (standard undetermined); van-truck, *United States v. Hill,* 430 F.2d 129, 130 (5 Cir. 1970) (reasonable suspicion); and scope of search not clearly defined, *Rodriguez v. United States,* 292 F.2d 709 (5 Cir. 1961). The Court then held, "[i]n Miss Forbicetta's case, her appearance, method of travel, and response to questions met a 'smuggling profile' born of experience gained in coping with that elusive activity. . . . this search was entirely reasonable."

Although not clearly stated, it must be inferred from the cases relied upon by the *Forbicetta* Court that it adopted a reasonable suspicion standard for strip searches. If the Court had desired to apply the real suspicion standard it logically would have referred to the definitive Ninth Circuit decisions of which it was aware. *See generally, United States v. Briones,* 423 F.2d 742 (5 Cir. 1970).

■ Consequently, although there was no visible signal on defendant Himmelwright's person that she had contraband concealed on her body,[1] the customs pa-

---

1. The platform shoes which Ms. Himmelwright was wearing and which the customs patrol officers believed might have concealed cocaine were not a visible signal that she had cocaine concealed on her body. The shoes could have been searched first before proceeding to the more offensive strip search. The facts of this case reveal there was no cocaine in the shoes. *See United States v. Chase,* 503 F.2d 571, 574 (9 Cir. 1974).

trol officers had a reasonable suspicion, i. e., the facts met a "smuggling profile," which justified a strip search. Ms. Himmelwright arrived from Colombia; in the experience of the customs officials a high percentage of individuals discovered in the act of attempting to smuggle cocaine arrive from Colombia. Her trip lasted only seven days; routinely smugglers spent a short trip of 7 to 10 days in Colombia. She was young and traveling alone; frequently in the officers' experience smugglers were young women, traveling alone. Ms. Himmelwright was unusually calm. Most persuasively, Ms. Himmelwright was extremely evasive about her occupation.

Finding a justification for the strip search does not complete this Court's inquiry. Defendant Himmelwright contends that before the contraband was seized, a body-cavity search had occurred and the clear indication test of the Ninth Circuit must be met.

As earlier stated, this Court agrees a body cavity search was conducted. It need not determine whether some lesser standard or the clear indication test is required for a body cavity search because the clear indication standard was satisfied.

Although the female customs inspectors did not search Ms. Himmelwright's vagina, she was told to remove a protruding object from her vagina. Ms. Himmelwright's removal of the object was not by consent and was a search.

During the course of the strip search, the female customs inspector observed a ¼ inch tab extending from the defendant's vagina. Though Ms. Himmelwright first claimed the object was a tampon and then a tissue, the customs inspector in her experience had reason to believe it was neither. Since the protruding object was visible during the strip search without physical invasion or visual intrusion into the cavity itself and without requiring Ms. Himmelwright to manually open her vagina, it could properly be considered by the matron in ap-

plying the clear indication test. *United States v. Holtz,* 479 F.2d 89, 94 (9 Cir. 1973), *United States v. Mastberg,* 503 F.2d 465, 471 (9 Cir. 1974). These facts, in addition to those known prior to the strip search and discussed earlier herein, provided a clear indication or plain suggestion that contraband was concealed in Ms. Himmelwright's vagina. Accordingly, it is

Ordered and adjudged that the motion to suppress is denied.

As a trial Court this Court is bound by the precedent of *Forbicetta* and has followed it today. Nevertheless, in this Court's opinion the scope of a strip search is not related to its justification and thus not reasonable under the Fourth Amendment unless the real suspicion standard of the Ninth Circuit is adopted. The *Forbicetta* decision does not provide sufficient safeguards for the innocent and virtuous from the potential degradation and humiliation of a strip search. *See generally, United States v. Holtz,* 479 F.2d 89, 94–97 (9 Cir. 1973) (Ely, J., dissenting).