Bobby PEREL and Steven Bercu,
Plaintiffs-Appellants,

v.

Donald E. VANDERFORD and Homer J. Fiegel, Agents of the United States Customs Agency of the Treasury Dept., Defendants-Appellees.

No. 76–1606
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 18, 1977.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Mark F. Howell, El Paso, Tex., for plaintiffs-appellants.

Wm. B. Hardie, Jr., Asst. U. S. Atty., El Paso, Tex., John E. Clark, U. S. Atty., San Antonio, Tex., for defendants-appellees.

Before GODBOLD, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Alleging that their constitutional rights had been violated by being required to submit to a strip search at the El Paso, Texas Border Station, plaintiffs-appellants, Bobby Perel and Steven Bercu, instituted a suit for damages. From the adverse jury verdict and judgment entered thereon, comes this appeal from the District Court for the Western District of Texas.

On January 9, 1975, appellants upon entering into the United States were detained

by defendants-appellees Donald Vanderford and Homer Fiegel, United States Customs Agents.

Acting upon a computer printout which stated that Bercu was suspected of smuggling drugs and Perel was an associate of Bercu, combined with their observation that appellants were acting suspiciously and evasively, the officers searched the car driven by appellants and then ordered them into a building where they were strip searched. The results were negative, the appellants allegedly were humiliated, and this suit followed.

■ Appellants contend that the District Court erred when it failed to charge the jury that probable cause was necessary to justify the search. We agree with the District Court. It has been held in this circuit and others that real or reasonable suspicion is the proper standard governing strip searches at the border.[1] *United States v. Forbicetta,* 484 F.2d 645 (5th Cir. 1973), *cert. denied* 416 U.S. 993, 94 S.Ct. 2404, 40 L.Ed.2d 772 (1974); *United States v. Diaz,* 503 F.2d 1025 (3d Cir. 1974); *United States v. Guadalupe-Garza,* 421 F.2d 876 (9th Cir. 1970). *See United States v. Kallevig,* 534 F.2d 411 (1st Cir. 1976). Therefore, it was not error for the trial judge to fail to give the requested instruction.

■ Appellants next contend that the trial judge committed error in limiting the scope of discovery available to the appellants. The proper standard to test this contention is to ascertain whether or not the trial judge abused his discretion.[2] We find no abuse.

Prior to trial, the appellants sought to discover from the individual defendants, the source of each specific item of information contained in the computer printout. It appears that appellants sought to assail the truthfulness of the information and the re-

liability of its sources. Appellants then hoped to prove that the officers, relying on defective information, had not acted with justifiable cause in conducting the search.

While the trial court apparently held the requested information to be irrelevant and privileged, 5 U.S.C.A. § 552(a)(4)(B) and (b)(7)(E), we find it unnecessary to determine whether a privilege existed since we agree that the information was irrelevant.

■ Initially we observe that the United States, whose system the officers relied upon, was not a party to the suit. The accuracy of the computer system in creating the requisite reasonable suspicion might be an issue if the United States were a party to this damage action or the prosecution in a criminal case. *See United States v. Williams,* 459 F.2d 44 (9th Cir. 1972). However, in the instant case, the appellants, to prevail, had to establish that the officers either acted subjectively in bad faith or unreasonably relied, objectively measured, on the computer printout. The officers clearly had the duty to act upon the information provided by their employer. Neither the time nor the means were present quickly to ascertain the basis of the printout so as not unnecessarily to detain the appellants. To require a customs officer, at his peril, instantaneously to ascertain the validity of a printout, or, to detain the traveler until an investigation of the printout is concluded, would quickly transform the customs system into an unwieldly and unworkable operation. The officers were not required in the exercise of their duties to view the report as would an impartial magistrate determining whether to issue a search or arrest warrant. The officers were clearly justified in relying upon the information received indirectly from their fellow officers. As the Supreme Court stated in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967):

---

1. Though we need not decide the question, we observe in passing that there may be substantive differences between the "real suspicion" standard and the "reasonable suspicion" standard. See the opinion of Judge Atkins in *United States v. Himmellwright,* 406 F.Supp. 889 (S.D.Fla.1975) for a discussion of this issue.

2. See Rule 26(b) F.R.Civ.P., Notes of Advisory Committee on Rules, 1966 Amendment, *Huff v. N. D. Cass Co. of Ala.,* 468 F.2d 172 (5th Cir. 1972).

Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. . . . A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.
386 U.S. at 555, 87 S.Ct. at 1218.

 Mindful that the United States was not a party to the suit, we agree that the officers acted reasonably in relying upon the printout. Thus, under the principle expressed in *Pierson, supra*, these officers are entitled to like protection and there was no error in refusing to allow the requested discovery.

 Appellants assert that the trial judge erred in allowing the appellees to cross-examine, for impeachment purposes, appellant Bercu about a letter advising a third party as to the availability of drugs in Europe. The trial judge determined that the appellant had "opened the door" by his denial of ever having promoted criminal activity and that the letter was relevant to the impeachment of Bercu's veracity. Although the letter to the trial judge no doubt had a prejudicial effect, the trial judge, as the record indicates, painstakingly weighed any prejudicial impact against its probative force and we are not inclined to tip the scales in the opposite direction from where they came to rest. Fed.Rules Evid. Rule 608, 28 U.S.C.A.

 Appellant's final contention is that the trial court's instruction to the jury was confusing and allowed the jury to bar one of the appellants from recovery if it found the other appellant to have been connected with criminal activity.

The record shows that the trial judge aptly cautioned the jury to consider each party separately and the court at the request of appellants' counsel gave an instruction that cured any possible confusion.

Now, you are instructed that you may find for one of the plaintiffs and not the other; for both of the plaintiffs; or for neither of the plaintiffs.

You are further instructed that you may find against one of the defendants, both of the defendants, or against neither of the defendants.

Separate verdict forms are furnished you to permit you any of the choices of verdict as mentioned. You will find that they are, in fact, twelve separate verdict forms. You may use all or part of them, but you need to read them very carefully and arrive at precisely what you find from the evidence to be the facts in this case upon which a verdict will be based.

\* \* \* \* \* \*

THE COURT: Ladies and gentlemen of the jury, I would ask that you pay very careful attention to what I am going to say and ignore whatever else is going on in the courtroom. The Court wants to be absolutely certain that you understand— and I think the multiple verdict forms will reenforce what the Court is saying to you—that you are to deal with each Plaintiff in this case and each Defendant on an individual basis, and you are to deal with them not in the sense of 'and', Plaintiff 1 and Plaintiff 2, but Plaintiff 1 and/or Plaintiff 2 so that you are to deal with them individually, if their rights have been violated or not, and to decide the facts in this case based on those Plaintiffs and those Defendants, and you will see that there are, of course, several combinations of them. And it has also been brought to my attention that I used the word 'and' in part of the charge in a way that—pardon me—in a way that might be confusing to you.

The word 'and' was used when I was giving you the elements that must be proven as essential elements of the Plaintiffs' claim. It was done in giving you the fourth element where I was referring to the loss of possible constitutional rights, not to be deprived of liberty without due process of law and of their Federal constitutional rights to be free from unreasonable search and seizure. There should be—there is no question in the

Court's mind—that constitutional rights and constitutional privileges each stand alone, and that if, in fact, there is deprivation of any one of them in connection with this charge, that that element is fulfilled. But you must find that the Defendants' conduct deprived the Plaintiffs of their Federal constitutional rights not to be deprived of their liberty without due process of law, or you must find that the Defendants' conduct deprived the Plaintiffs of their Federal constitutional rights to be free from unreasonable searches and seizures. So the Court intends to clarify that for you, because it, of course, is a very fundamental premise in our form of government, that these constitutional rights are assured to each Defendant—pardon me—to each citizen and that they stand, each one of them, alone and by themselves.

Therefore the judgment of the District Court is

AFFIRMED.