UNITED STATES

v.

**Thomas S. GIARDINA, 151 56 1973, Seaman (E-3), U. S. Navy.**

**NCM 78 0556.**

U. S. Navy Court of Military Review.

Sentence Adjudged 16 Dec. 1977.

Decided 20 Sept. 1979.

---

LT Michael F. Fink, JAGC, USNR, Appellate Defense Counsel.

LCDR Paul B. Thompson, JAGC, USN, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and MICHEL, JJ.

BAUM, Senior Judge:

Appellant, contrary to his pleas, stands convicted of wrongful possession and introduction on board USS DUPONT (DD–941) of 933.83 grams of marijuana in the form of hashish and 684.50 grams of raw opium, as well as possession with the intent to distribute these same substances, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934. His sentence to a bad-conduct discharge, confinement at hard labor for 2 years, total forfeitures and reduction to pay grade E–1, as imposed by a general court-martial composed of officer members, was approved below.

Before this Court, appellant asserts three errors: (1) the Government failed to prove beyond a reasonable doubt that appellant's possession of the controlled substances was knowing; (2) the record of trial is not verbatim; and (3) the search of his leather bag in which the contraband was discovered was illegal. We disagree with all three assignments. The first and second assignments are summarily rejected. The third will be addressed.

The evidence at trial revealed that the hashish and opium which form the basis for the offenses charged were discovered upon appellant's return from liberty to the DUPONT in Karachi, Pakistan. Appellant was subjected to a search at the quarterdeck; it was during this search that the contraband was ultimately discovered. The initial actions of the quarterdeck personnel in searching appellant were in compliance with orders from the commanding officer of the DUPONT that all persons, and their property, would be searched as they came aboard the ship during its 10-day stay in Karachi. This procedure was instituted in an effort to stem the flow of drugs aboard the ship, a problem which had plagued the command during previous visits to foreign ports where drugs were cheap and readily available. Since this was DUPONT's last extended port call before return to the United States, special security precautions were ordered and, prior to arrival in port, the crew was fully informed of what they could expect. Everyone, including the commanding officer and executive officer, was to be searched upon return to the ship during its stay in Karachi; this included pat-down searches of each person coming aboard and inspection of all oncoming property. Indeed, this plan was carried out, but, despite these efforts drugs were found aboard ship. As a result, extraordinary security measures were implemented on the last night in port, including augmentation of the quarterdeck watch with the ship's top law enforcement officers, the Chief Master-at-Arms and his assistant. It was, in fact, the Assistant Chief Master-at-Arms, on the last night at Karachi, who discovered appellant's drug cache, after the Duty Master-at-Arms had already searched appellant's newly purchased travel bag. While the Duty Master-at-Arms was inspecting other items belonging to appellant, the assistant chief of the ship's security force picked up appellant's leather bag for closer inspection. Noting the heavy unbalanced weight of the bag, he and the Chief Master-at-Arms proceeded to scrutinize the travel

bag. The investigation disclosed what felt like a mushy substance under the inside bottom, an odor of hashish, and what appeared to be new stitching at the lining. Suspecting drug contraband under a false bottom, they obtained permission from the Command Duty Officer to cut the bag open with a knife, whereupon the drugs were discovered.

Appellant does not challenge the legality of the commanding officer's search policy and, indeed, affirmatively states that the search of appellant's person and property up to the point the Assistant Chief Master-at-Arms picked up the travel bag was not offensive to the Fourth Amendment of the U.S. Constitution and came within the category of searches sanctioned by Chief Judge Fletcher in *United States v. Rivera*, 4 M.J. 215 (C.M.A.1978), as a "border search." Appellant submits, however, that the subsequent action of cutting his bag open with a knife was an intrusion that exceeded the scope of the commanding officer's search policy, which required probable cause. Appellant argues that since this action was not based on probable cause it was unreasonable and offensive to the Fourth Amendment and that the contraband seized was inadmissible. We disagree.

While we are not convinced that the border search rationale of Chief Judge Fletcher in *Rivera, supra*, is necessarily the law of that case, in light of the positions of the two other judges, who each concurred in the result, we find such a rationale an appealing analogy, as applicable to the facts here as it was in *Rivera*. The defense concedes that the routine searches made of all personnel and their property in this case were lawful upon application of the border search doctrine. The question presented, however, is whether a search which goes beyond routine intrusion, such as the cutting open of a leather bag with a knife, can be justified under the border search line of cases without resort to a determination of probable cause. We are mindful that Chief Judge Fletcher, in *Rivera*, after noting a reservation in this area by the United States Supreme Court in *United States v. Ramsey*, 431 U.S. 606, 618 n. 13, 97 S.Ct. 1972, 52 L.Ed.2d 612 (1977), expressly "reserved judgment as to whether the manner and degree of intrusion which characterized a given set of border search procedures could prove unreasonable and offensive to the Fourth Amendment."[1] For guidance, then, we must look to the United States Courts of Appeal.

Several courts of appeal have developed their own rules and standards for border searches, not based on probable cause, where intrusion is greater than that involved in matter-of-course searches of a person's luggage or when a person is stopped for visa examination. Some of these courts, while continuing to reject any requirement for probable cause, have recognized that certain intrusive searches at the border can be challenged constitutionally when customs officials have no reason to suspect criminal activity. For example, the Second Circuit, in *United States v. Glaziou*, 402 F.2d 8, 12 (2nd Cir. 1968), stated that:

> Typically, mere suspicion of possible illegal activity within their jurisdiction is enough to "cause" to permit a customs officer to stop and search a person. *Rodriguez-Gonzalez v. United States* [378 F.2d 256 (9 Cir.)] supra; *Witt v. United States* [287 F.2d 389 (9 Cir.)], supra; *United States v. Berard* [281 F.Supp. 328 (D.Mass.)], supra; *Thomas v. United States* [372 F.2d 252 (5 Cir.)], supra. This is not to say that the restrictions of the Fourth Amendment that searches and seizures may not be unreasonable are inapplicable to border stops and searches conducted by customs officials. On the contrary, border stops and searches, like all stops and searches by public officials, are restricted by the requirement that they be reasonable, see, e. g., *Boyd v. United States*, supra [116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746]; *Carroll v. United States*, supra [267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543]; *Morales v. United States*, supra [378 F.2d 187 (5 Cir.)], but what is reasonable, of course, will depend on all

---

1. *United States v. Rivera*, 4 M.J. at 216 n. 5.

the facts of a particular case. E. g., *Cooper v. State of California*, 386 U.S. 58, 59, 87 S.Ct. 788; 17 L.Ed.2d 730 (1967); *Boyd v. United States*, supra; *Carroll v. United States*, supra; *United States v. McGlone*, 394 F.2d 75 (4 Cir. 1968).

The Ninth Circuit Court of Appeals, in its attempt to establish standards of fourth amendment reasonableness for intrusive searches, such as border "strip" searches, requires an articulable suspicion of criminal activity, which it calls "real suspicion." [2] This has been defined as a:

> [S]ubjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his body for the purpose of transporting it into the United States contrary to law.
>
> The objective, articulable facts must bear some reasonable relationship to suspicion that something is concealed on the body of the person to be searched; otherwise, the scope of the search is not related to the justification for its initiation, as it must be to meet the reasonableness standard of the Fourth Amendment.[3]

(Citations omitted).

The Third Circuit Court of Appeals has also applied this "real suspicion" test to the border strip search.[4] Within the Fifth Circuit, however, a more flexible standard, "reasonable suspicion," is the rule, requiring that customs officials merely have cause to suspect that contraband exists in the particular place that the officials decide to search.[5]

 Applying the border search analogy to this case, we agree with the various circuit courts of appeal and categorically reject any requirement for probable cause. We believe, however, as do those courts, that some articulable suspicion of criminal activity is required. While it is arguable that the degree of intrusion involved in cutting open appellant's bag is less than that of a strip search and, thus, does not require the application of either a "reasonable suspicion" or "real suspicion" standard in order to justify the search in this case, we find it unnecessary to decide that issue inasmuch as the facts of this case easily meet either of these two standards. We will apply the Ninth Circuit's more rigorous "real suspicion" standard and, in so doing, find that the unbalanced weight, the mushy feeling under the inside bottom, the appearance of new stitching at the lining and the odor of hashish were objective, articulable facts that would reasonably lead an experienced, prudent law enforcement officer, such as the Chief Master-at-Arms, to suspect that appellant had secreted illicit drugs in his bag and therefore fully warranted

---

**2.** *Henderson v. United States*, 390 F.2d 805, 808 (9th Cir. 1967). *See United States v. Carter*, 592 F.2d 402, 405 (7th Cir. 1979).

**3.** *United States v. Guadalupe-Garza*, 421 F.2d 876, 879 (9th Cir. 1970), cited most recently in *United States v. Rodriguez*, 592 F.2d 553, 556 (9th Cir. 1979). It appears that the Tenth Circuit might acquiesce in the "real suspicion" standard. *See United States v. Fitzgibbon*, 576 F.2d 279, 284 (10th Cir. 1978).

**4.** *United States v. Diaz*, 503 F.2d 1025 (3rd Cir. 1974). *See also United States v. Nelson*, 593 F.2d 543, 545 n. 4 (3rd Cir. 1979).

**5.** *United States v. Himmelwright*, 551 F.2d 991, 995 (5th Cir. 1977), *cert. denied*, 434 U.S. 902, 98 S.Ct. 298, 54 L.Ed.2d 189 (1978). *See United States v. Klein*, 592 F.2d 909, 911 n. 2 (5th Cir. 1979); *United States v. Rieves*, 584 F.2d 740 (5th Cir. 1978); *United States v. Smith*, 557 F.2d 1206 (5 Cir. 1977), *cert. denied*, 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978). The First Circuit had expressly declined to embrace either the "real suspicion standard or the less demanding mere suspicion test," *United States v. Kallevig*, 534 F.2d 411, 413 (1st Cir. 1976), believing instead that they ". . . need not opt for either standard," stating that it was more preferable to find "more than enough 'objective, articulable facts' to support the officers' subjective suspicion and therefore satisfy the real suspicion standard." Most recently, however, that Circuit reluctantly adopted the "reasonable suspicion" test, feeling that ". . . it provides the starting point for analyzing the particular facts of individual border searches." *United States v. Wardlaw*, 576 F.2d 932, 934 (1st Cir. 1978). The Second Circuit avoids the "real suspicion" standard, and prefers to speak simply in terms of "reasonableness." *United States v. Asbury*, 586 F.2d 973, 976 (2d Cir. 1978).

the cutting open of the bag. Accordingly, we find the search and seizure to have been lawful.

The findings of guilty and sentence approved below are affirmed.

Judge PRICE and Judge MICHEL concur.

**UNITED STATES**

**v.**

**Robert COOPER, 058 50 7627, Private (E-1), U. S. Marine Corps.**

**NCM 79 1027.**

U. S. Navy Court of Military Review.

Sentence Adjudged 21 March 1979.

Decided 25 Sept. 1979.

LT Vance J. Bettis, JAGC, USNR, Appellate Defense Counsel.

LT Christine M. Yuhas, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GREGORY and GLADIS, JJ.