George CLAUS, M.D., Ph.D.,
Plaintiff-Appellant,

v.

Ferenc GYORKEY and Baylor College of Medicine, Defendants-Appellees.

No. 81–2085.

United States Court of Appeals,
Fifth Circuit.

April 29, 1982.

Stanley J. Marcuss, Washington, D. C., for plaintiff-appellant.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for Gyorkey.

Fulbright & Jaworski, A. Martin Wickliff, Jr., A. J. Harper, II, Houston, Tex., for Baylor College of Medicine.

Before BROWN, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

This appeal arises out of a civil suit for damages brought by Claus, a full-time research assistant in a United States Veterans Administration hospital in Houston, Texas ("VA"), and an associate professor at Baylor College of Medicine ("Baylor") from March through June 1975. Claus initially filed suit in Texas state court. Defendant Gyorkey, Chief of Laboratory Services at the VA, professor at Baylor, and Claus' direct supervisor during his employ, removed the case on December 30, 1976, pursuant to 28 U.S.C. § 1442(a)(1) and § 1446. Gyorkey alleged in his removal petition that the complaint was directed at acts done in his capacity as a federal employee as chief of laboratory services at the VA. Claus never filed any opposition to removal. Claus' complaint alleged that defendants Gyorkey and Baylor induced him to come from Vienna, Austria, to accept a permanent joint appointment at the VA and on the academic staff of Baylor, that upon his arrival he was given only a temporary appointment at less pay, and that he was inappropriately discharged from his joint position within a few months. Claus alleged that he sustained damages as a result

of Gyorkey's and Baylor's alleged misrepresentations regarding employment terms and complicity in "wrongful termination" of his employ.

Many of the facts surrounding Claus' recruitment, employment, and eventual discharge remain undisputed. According to Claus' deposition, he applied for an employment at the VA because his long-time friend, Dr. Krisko, was employed as a physician in the pathology service of which Gyorkey was chief. Claus stated that he had discussed the possibility of employment with Krisko and Busch, Chairman of the Department of Pharmacology at Baylor, as early as 1972 while on a visit to the United States as a student in the University of Vienna Medical School. Through a series of written communications, meetings, and long-distance phone calls between Houston and Vienna, Gyorkey invited Claus to apply for employment as a physician-scientist (or "research associate") with the VA. Several Gyorkey letters in 1974 led Claus to assume that he could expect both a research associate position and an academic appointment at Baylor as an associate professor. Nonetheless, Claus never signed any contract of employment with either Baylor or the VA to this effect. His written employment "contract," such as it was, was limited to his application form for federal employment, which included a statement that he would accept temporary employment, and a VA memorandum, dated August 14, 1974, which was hand-delivered to Claus prior to his departure to the United States. In this memorandum, addressed to the "Administrative Officer," Gyorkey and Krisko recommended Claus for a "temporary appointment" in pathology research. The memorandum specifically stated:

> The appointment is to be temporary. Furthermore, Dr. Claus will prepare research proposals through Medical Research Service and the Dean's Committee for Research Associateship in Pathology and his future status will depend on the decision rendered by the respective review authorities.
>
> Dr. Claus will hold an academic staff rank at Baylor College of Medicine, Department of Pathology, which has been endorsed by Professor Titus.

Claus claims that he was urged, particularly by Gyorkey, not to take this memorandum seriously, that his appointment would only be "temporarily temporary," and that a permanent appointment "with tenure" would be forthcoming. According to Claus, he was told that everything would be all right and that this was "just an internal situation that [would] be rectified as soon as possible." Claus claims that he was initially promised a salary of $32,000 annually but that a subsequent Gyorkey letter modified this to an "assurance" of $25,000 per annum.

Despite these early indications that his subsequent employment would not meet his prior expectations, Claus decided to leave Vienna, and he arrived in Houston on September 7, 1974. On arrival, he was not immediately affiliated with Baylor, and his VA salary was only $20,677. He complained to Gyorkey, who, according to Claus, promised to remedy matters. Claus was finally made associate professor on March 1, 1975, and his salary was supplemented, over the course of some months, by $3,137 in cashier's checks from Gyorkey. Claus' work, under Gyorkey's supervision, included the writing of grant proposals seeking private and public funds to support research projects at Baylor or the VA. Claus had no teaching or other duties associated with Baylor. On June 11, 1975, Gyorkey requested the termination of Claus' employment due to "nonavailability of funds." Two days later, Claus received a letter from the VA chief of personnel informing him that, since research funds were not available to continue his project, it was necessary that his temporary appointment be terminated as of June 30, 1975.

In his complaint, Claus alleges that he was discharged not because of nonavailability of funds but "because of [Claus'] discovery of the lack of proper medical credentials" of Gyorkey. According to Claus, he discovered discrepancies in Gyorkey's curriculum vitae in the course of his writing of

research proposals. His investigation into Gyorkey's European medical credentials and his efforts to bring these facts to the attention of the Maryland Board of Medical Examiners, Baylor, and the VA led, Claus asserts, to his discharge.

The district court granted summary judgment on Gyorkey's behalf on the ground of federal officials' absolute immunity from ordinary tortious liability. Appellant Claus' response to the district court's decision is threefold. First, Claus argues that he raised a material issue of fact sufficient to overcome summary judgment on the scope of Gyorkey's authority as Chief of Laboratory Services at the VA. Specifically, Claus alleges that Gyorkey held himself out as a Baylor employee when he wrote some of his early recruitment letters to Claus, outlining likely employment terms, on Baylor stationery. He claims that Gyorkey promised to supplement Claus' VA salary from his "Baylor monies" and in fact did so. Thus, Claus argues that Gyorkey's recruitment and hiring activities may be imputed to Baylor and were, in any case, outside the scope of his federal duties as a VA employee. Claus does not, however, deny that at all relevant times Gyorkey was ostensibly acting on behalf of the VA. Indeed, Claus never challenged Gyorkey's removal petition. Claus contends that Gyorkey was wearing two hats, as both a federal and a private employee, when he recruited Claus and that he should accordingly not be entitled to government immunity for acts undertaken, at least in part, on behalf of Baylor.

■ Claus misapprehends the nature of federal officials' immunity. The applicable law is clear. Absent an allegation of a tort of constitutional magnitude, federal officials are entitled to absolute immunity for ordinary torts committed within the scope of their jobs. *Evans v. Wright*, 582 F.2d 20 (5th Cir. 1978) (recognizing the restrictive holding of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), as applicable only to actions amounting to constitutional violations). The district court here properly summarized the law on absolute immunity:

> It is only necessary that the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities to be within the scope of his authority. *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir. 1967), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967).

Our examination of the evidence presented confirms the district court's conclusion that Gyorkey acted at all times clearly within the scope of his authority. Claus presented nothing to contradict Gyorkey's abundant evidence, both exhibits and deposition testimony, demonstrating that, as chief of laboratory services at the VA, Gyorkey was and apparently still is responsible for recruiting and interviewing prospective candidates for professional positions within his service, for making recommendations for their employment, staff classification, salaries, and areas of professional responsibility, for recommending members of his professional staff for appointments at Baylor, and for rating and recommending his professional staff for awards, promotions, and terminations. Claus presented nothing to challenge the unmistakeable · terms of the affiliation agreement between Baylor and the VA.[1]

1. The affiliation agreement makes clear the relationship between Baylor and the VA:

This agreement, when approved by the United States Veterans Administration and the Baylor College of Medicine at Houston, Texas, shall authorize the Veterans Administration Hospital, to affiliate with the Baylor College of Medicine at Houston, Texas for the purposes of education and training. The College of Medicine accepts *advisory responsibility* for the education and training programs conducted with the Veterans Administration Hospital. The Veterans Administration *retains full responsibility* for the care of patients, including all administrative and professional functions pertaining thereto.

Responsibilities shall be divided as follows:
1. The Baylor College of Medicine at Houston
   a. Will organize a Dean's Committee ....
   b. Will nominate to the Veterans Administration Hospital Director on an annual basis a staff of consulting and attending specialists in the number and with the qualifications agreed upon by the Dean's Committee and the Veterans Administration.

In fact, Claus' deposition supports the clear import of this affiliation agreement. As Claus himself admitted, under the agreement his nontenured position at Baylor was in fact conditioned upon his continued employment with the VA. As he acknowledged, his Baylor "associate professorship" was at all times only a "paper appointment" without any remuneration, and his work was for the VA, not Baylor. Given these facts, Gyorkey's recruitment efforts must be seen as squarely within his VA duties, and his use of Baylor stationery, without more, does not make his efforts fall outside his VA duties. *Compare Norton v. McShane*, 332 F.2d 855 (5th Cir. 1964), *cert. denied*, 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965): "The requirements that the act be within the outer perimeter of the line of duty is no doubt another way of stating that the act must have more or less connection with the general matters committed by law to the officer's control or supervision, and not be manifestly or palpably beyond his authority." *Id.* at 858–59. Contrary to Claus' allegations, the letters do not suggest that Gyorkey held himself out as acting on behalf of Baylor. Claus' deposition makes it clear that by the time he accepted the offered position, he knew both the nature of his VA duties and his supervision by Gyorkey—all in accord with the Baylor-VA affiliation agreement. As to the $3,137 salary supplement, Claus presented no evidence contradicting Gyorkey's testimony that Gyorkey provided these funds from his personal account, drawing it in the form of cashier's checks in order to facilitate cashing. Even if Gyorkey misrepresented the source of his funds as "Baylor monies," this does not defeat his official immunity. As the Supreme Court indicated in *Barr v. Matteo*, 360 U.S. 564, 575, 79 S.Ct. 1335, 1341, 3 L.Ed.2d 1434 (1959), "[t]he fact that the action here was taken within the outer perimeter of petitioner's line of duty is enough to render the privilege applicable, despite the allegations of malice in the complaint . . . ."

■ Second, Claus argues, without benefit of precedent or supporting statute, that since he raised questions of the legitimacy of Gyorkey's medical degree, there was a question of material fact as to whether Gyorkey was a *legitimate* federal employee. The problem with Claus' position, however, is that regardless of Gyorkey's educational history, the prerequisite to obtaining a position as a VA physician is merely a license from the State of Maryland. Regardless of Gyorkey's competence or educational history, Claus does not dispute that Gyorkey had this license and was at all times entitled to perform the duties of a VA physician. This

---

c. Will supervise, through the Veterans Administration Hospital Director and the staff of consulting and attending specialists, the education and training programs of the Veterans Administration Hospital and such programs as are operating jointly by the Veterans Administration and the College.

d. Will nominate all physicians for residency or other graduate education and training programs in the numbers and with the qualifications agreed upon by the Dean's Committee and the Veterans Administration.

2. The Veterans Administration

a. Will operate and administer the Veterans Administration Hospital.

b. Will appoint qualified physicians to full-time and regular part-time staff of the Hospital. . . . The regularly appointed staff, including Chiefs of Service, shall be fully responsible to their immediate superiors in the Veterans Administration.

c. Will consider for appointment the attending and consulting staff and the physician trainees nominated by the Dean's Committee and approved by the Veterans Administration.

. . . .

4. Chiefs of Service

a. Will be responsible to their superiors in the Veterans Administration for the conduct of their Services.

. . . .

5. The Attending Staff

a. Will be responsible to the respective Chiefs of Service.

. . . .

d. Will hold faculty appointments in the Baylor College of Medicine, or will be outstanding members of the profession with equivalent professional qualifications acceptable to the Medical College and the Veterans Administration.

(emphasis added).

is what matters for purposes of federal official immunity.[2]

▮ Claus' final contention is that his complaint has a constitutional, i.e., first amendment, dimension because he was allegedly discharged for trying to bring Gyorkey's lack of medical qualifications to the attention of the relevant authorities and that, therefore, within the rule of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), Gyorkey's immunity was at best only qualified. We question whether Claus' claim can legitimately be stated in first amendment terms. As Justice Rehnquist noted in *Butz, id.* at 522, 98 S.Ct. at 2919, ordinary torts can easily be framed as constitutional ones. Acceptance of Claus' view would give a constitutional dimension to countless ordinary discharge cases. *See, e.g., Taylor v. Foremost-McKesson, Inc.*, 656 F.2d 1029 (5th Cir. 1981) (affirming termination at will in case where plaintiff alleged he was terminated for investigating employer's illegal activities; Georgia law held not to recognize a "public policy" exception); *Southwestern Bell Telephone Co. v. Dixon*, 575 S.W.2d 596 (Tex.Civ.App.—San Antonio 1979), *writ dism'd w. o. j.*, 607 S.W.2d 240 (Tex.1980) ("at will" rule followed, although firing was allegedly based on employee's complaints of company wrongdoing, kickbacks, and other illegal activities). We need not reach the issue here, however, because, though Claus had ample opportunity to do so, he never amended his complaint to state a constitutional claim. Claus should at least have given the defendants notice that a constitutional claim was being asserted, and we cannot take cognizance of a claim asserted for the first time on appeal.

▮ Much of the evidence discussed above also justifies the district court's grant of summary judgment in favor of Baylor. The court concluded that, since Claus was employed by the VA pursuant to the affiliation agreement between Baylor and the VA, his employment with Baylor was for an indefinite term and was terminable at will. We agree.

▮ Texas law on the point flows from common law rather than from statute. An employee hired for an indefinite period of time has, under Texas law, a contract that is terminable at the will of either party. The employer "may, without liability, discharge the employee for a good reason, a bad reason, or no reason at all." *Phillips v. Goodyear Tire & Rubber Co.*, 651 F.2d 1051, 1054 (5th Cir. 1981). The undisputed evidence here shows that Claus' VA appointment was for an indefinite time period and was contingent on the availability of research funds. We have noted that Claus' application for federal employment in fact indicated that he would accept temporary appointment of four months to a year with the VA. Under the August 14, 1974, memorandum between the parties, the sole attempt by the parties to make the contractual employment terms explicit, Claus' VA appointment was expressly stated to be "temporary" with "future status ... [dependent] on the decision rendered by the respective review authorities." These authorities decided to terminate Claus as of June 30, 1975, and gave as their reasons the lack of available research funds.[3] When this occurred, Claus' faculty position at Baylor, always contingent upon continued employment with the VA, also terminated.

▮ While Claus claims that the parties misrepresented the permanency of his VA and Baylor positions during his recruitment, his own deposition testimony belies counsel's arguments on appeal. As we have

---

2. Moreover, we are far from certain whether Claus really wishes to press this argument upon us. If Gyorkey was never a federal employee, after all, this court's assumption of jurisdiction under 28 U.S.C. § 1442(a)(1) was improper, and this case should have never been removed to federal court. We note that Claus never filed any opposition to Gyorkey's removal petition.

3. Note that an employer's statement of reasons for a discharge implies "no recognition of an obligation to give reasons, or that the reasons stated should be considered just cause for discharge." *Watson v. ZEP Manufacturing Co.*, 582 S.W.2d 178, 179 (Tex.Civ.App.—Dallas, writ ref'd n. r. e. 1979).

noted, in his deposition Claus specifically acknowledged that his Baylor position was a paper appointment with no tenure or remuneration and that both Krisko and Gyorkey had informed him that his Baylor academic appointment was to last only "while working for the VA."[4] Counsel's valiant attempt to bring this case within authorities such as *Dallas Hotel Co. v. Lackey*, 203 S.W.2d 557 (Tex.Civ.App.—Dallas 1947, writ ref'd n. r. e.), must, given the sworn deposition of his own client and the written terms of the August memorandum between Claus and the VA, fail. Thus, while in *Dallas Hotel* the court stated that a circumstance of "controlling weight" in construing the contract there to be of longer than a month's duration was the fact that the employee sold his home and moved his family to the place of the new job, *id.* at 562, this factor is not brought into play here: Claus testified that his appointment at Baylor was not a "deciding factor" in his decision to move to Houston and work at the VA. While we agree that the Texas "at will"

rule is subject to the general rule that the duration of an employment agreement is to be ascertained from all the circumstances surrounding the employment,[5] we are unable to conclude that the circumstances surrounding Claus' employment create a material issue of fact as to the terminable nature of his position with Baylor.[6] Even if we ignore the August memorandum and Claus' deposition statements, Claus can draw little support from certain ambiguous statements made by Gyorkey. The thrust of these assurances was that Claus' "at will" position was only "temporarily temporary," i.e., that Claus could hope for an eventual "better position" in the future with the VA and presumably with Baylor. Claus was not given to understand that his then current position with Baylor was permanent but only that an effectively permanent position would, *if all went as expected*, materialize. Claus has not raised a material issue of fact as to the presence of a contractual or civil service limitation on the VA, and ultimately on Baylor, for his unpaid faculty title.[7] In

---

4. Claus' deposition statements oppugn the central "contested" issues:

   A. .... Anyway, the appointment at Baylor wouldn't have been any amount of money, so it would just have been physically a paper appointment—as it is anyway.

   ....

   Q. So before you came to Houston while you were still in Vienna, you had been informed by Dr. Krisko and Dr. Gyorkey through this memorandum, which has been marked Exhibit 5, that your appointment will be temporary?

   A. Will be temporary, that is right.

   ....

   Q. Was it your understanding that before you came to take the job that Dr. Krisko told you that your job would be temporary and your future application would be considered upon your research by the appropriate authorities? This was your understanding before you came here?

   A. That is right.

   ....

   Q. Was it your appointment at Baylor would be conditioned upon your appointment at VA?

   A. I knew that from Gyorkey, but Busch did not say this in these terms....

   ....

   Q. You did understand at the time that you and Dr. Titus had this discussion, in No-

vember of 1974, that was not a tenured position?

   A. Oh, yes. Even an associate professorship is not a tenured position.

5. We are aware that the terms of an oral contract, once reduced to writing, are, under the Texas parol evidence rule, final, and all prior and contemporaneous negotiations, promises, and agreements are presumed to be merged into the written instrument. *See, e.g., Natural Gas Distributing Corp. v. Williams*, 355 S.W.2d 194 (Tex.Civ.App.—Waco 1962, writ ref'd n. r. e.). We question, without deciding, whether this rule is applicable here. The August memorandum, essentially an internal administrative VA memorandum, was one of a series of written communications between the parties and can be considered *the* employment contract between Claus and the VA only with difficulty. We, therefore, prefer to err on the side of caution and consider Claus' employment in light of all the communications between the parties.

6. The VA, for which Claus performed all his work and which paid his salary, was not named as a defendant below.

7. Neither can Claus claim that Gyorkey's statements evinced an agent's "apparent authority" to offer a semi-permanent position. Texas law is clear that proof of agency and scope of agent

the absence of such a limitation, Texas law is clear that a position is terminable at will. Because his employment was terminable at will, no cause of action for conspiracy or intentional breach of or interference with business exists, as a matter of law. See, e.g., *Davis v. Alwac International, Inc.,* 369 S.W.2d 797, 801–02 (Tex.Civ.App.—Beaumont 1963, writ ref'd n. r. e.).

Claus' final challenge to the court's disposition of his claims against Gyorkey and Baylor is a general allegation that he was denied due process "when the trial judge failed for some seven months to rule on the plaintiff's motion to defer consideration of summary judgment until after completion of discovery" and awarded summary judgment without affording plaintiff an opportunity to oppose the defendants' motions for summary judgment.

The procedural history of this case is instructive. Claus' initial suit was filed on November 30, 1976, in Texas state court. Defendant Gyorkey removed the case on December 30 and filed his answer in February 1977. Claus and Gyorkey were deposed by November 1978, but the deposition of Krisko, one of Claus' own witnesses, was never completed. On July 5, 1979, after a pretrial conference, the trial court, in response to defendants' assertions that Claus' complaint failed to state a cause of action, gave Claus until August 6, 1979, to file an amended complaint. Defendants were given until August 31, 1979, to file dispositive motions for judgment. On July 20, 1979, Claus' counsel withdrew due to health problems, and Claus was given until August 31 to obtain new counsel. Defendants' October 26, 1979, motion to dismiss for want of prosecution was denied in November 1979,

and Claus was given until January 14, 1980, to obtain new counsel. On February 11, Claus' motion to substitute counsel was filed, and on February 25, the court granted the substitution. By order of March 27, 1980, the case was set for docket call on April 28. All discovery was to be completed by April 14, 1980, and a pretrial order was to be filed by April 23. Claus' motion for continuance and defendants' motions for summary judgment were filed on April 7. The motion for continuance was granted on April 14, and on April 21 Claus filed a "motion to defer consideration" of summary judgment. Four days later defendants filed opposition to this motion to defer. The district court did not dispose of these motions until November 6, when the court entered a final judgment, along with memorandum and order, in favor of defendants and dismissing Claus' action "on the pleadings and evidence submitted." Claus' motion for reconsideration was denied on February 10, 1981.

We question whether Claus' motion to defer consideration without accompanying affidavits can be considered a responsive pleading in compliance with Fed.R. Civ.P. 56(f). It is nonetheless obvious that the district court's grant of summary judgment was not erroneously based on Claus' inattention to the niceties of civil procedure. *Compare Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210 (5th Cir. 1976) (even where a nonmoving party fails to submit opposing affidavits, a grant of summary judgment is inappropriate, and will be vacated, if the moving party has not satisfied its burden of proving the absence of any material issues of fact). The court, as we have, evidently considered whether

---

cannot be proved by statements of the purported agent *alone. See, e.g., Sharpstown State Bank v. Great American Ins. Co.,* 441 S.W.2d 548, 567–68 (Tex.Civ.App.—Austin 1969), *rev'd on evid. grounds,* 460 S.W.2d 117 (Tex.1970), *on remand,* 469 S.W.2d 254 (Tex.Civ.App.—Austin 1971, writ ref'd n. r. e.). Under the affiliation agreement between Baylor and the VA, Gyorkey had no authority to offer Claus any position with Baylor other than of the kind Claus actually got—a paper appointment contingent on his remaining with the VA. That Baylor had clothed Gyorkey with authority to

offer Claus a "paper" appointment as unpaid research associate at Baylor in connection with Claus' VA work and the Baylor-VA agreement is no indication of any apparent authority to hire Claus as a Baylor employee with any kind of semi-tenured term apart from the VA-Baylor program. All Gyorkey's "hiring" authority—actual or apparent—was VA authority, and it related to Baylor only as a part of the VA-Baylor program, where the Baylor part was "paper" and contingent on the party continuing in the relevant VA position.

the moving parties, Gyorkey and Baylor, satisfied their burdens of proving the absence of material issues of fact. In granting summary judgment against Claus, the court did not violate appellant's due process rights. A party opposing a motion for summary judgment is under a duty to act diligently, and here Claus had nearly seven months—from the April 21 motion to defer to the court's November 6 entry of final judgment—to demonstrate to the court that there was indeed additional relevant discovery to be had. He cannot now assert that he was not given sufficient time within which to develop his case. Claus' allegation of lack of sufficient notice is also frivolous. Claus was on notice, as of April 7, that the court was considering the defendants' motions for summary judgment. The court did nothing improper in ruling on these motions in a case pending since December 1976 at the same time that it disposed of Claus' motion to defer consideration. In view of the case's long procedural history, any allegation that Claus was "hurried out of court" [8] is unconvincing.

For all these reasons, we find that the district court did not err in awarding summary judgment to defendants Gyorkey and Baylor, and the judgment below is in all respects

AFFIRMED.

**8.** *Compare* 6–Part 2 *Moore's Federal Practice*    ¶ 56.15(6) at 56–606 (2d ed. 1980).