David O. MANSTREAM and Carolyn H. Manstream, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

David O. MANSTREAM and Carolyn H. Manstream, Defendants.

Civ. A. Nos. 81–109–S, 85–V–1074–S.

United States District Court, M.D. Alabama, S.D.

Sept. 4, 1986.

D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., for U.S.

Manstream, pro se.

## OPINION AND ORDER

VARNER, District Judge.

These cases are now before the Court upon the motion to dismiss and/or in the alternative motion for summary judgment filed on February 19, 1986 in Civil Action No. 81–109–S by the United States on behalf of all defendants; and, the motion for summary judgment filed on February 20, 1986 in Civil Action No. 85–V–1074–S by the United States.

These cases were consolidated by order of this Court entered on the 7th day of October 1985. The motions were set for hearing on March 27, 1986 at 9:00 a.m. in Montgomery, Alabama by orders of the Court entered on February 21, 1986.

The cases came on for hearing on March 27, 1986. The Manstreams did not appear for the hearing. The United States between the filing of its motions for summary judgment in the respective cases and the hearing date filed five affidavits in support of the motions. These affidavits are as follows: (1) affidavit of Malvin Laye, Assistant County Supervisor, Crenshaw County, Alabama in Civil Action No. 81–109–S; (2) the affidavit of Dale N. Richey, State Director, Farmers Home Administration, in Civil Action No. 81–109–S; (3) the affidavit of Ronald D. Wyatt, County Supervisor, Farmers Home Administration, Geneva County, Alabama in Case No. 85–V–1074–S; (4) the affidavit of James H. Ozment, Housing Loan Specialist, State Office, Farmers Home Administration, in Civil Action Nos. 81–109–S and 85–V–1074–S; (5) the affidavit of Rufus Sirmon, former Acting Chief of Rural Housing in the Alabama Farmers Home Administration State Office in Civil Action No. 81–109–S and Civil Action No. 85–V–1074–S. The United States also filed a memorandum in support of motion to dismiss and/or motion for summary judgment in Civil Action No. 81–109–S. The Manstreams did not file any affidavits or other documents in opposition to the motions for summary judgment.

The origin of these two cases is the making of a rural housing loan by the United States of America acting through the Farmers Home Administration, United States Department of Agriculture (hereinafter referred to as United States) to David O. Manstream and Carolyn H. Manstream (hereinafter referred to as Manstreams) pursuant to § 502 of the Housing Act of 1949, 42 U.S.C. § 1472 (1982).

On May 6, 1977 the Manstreams executed and delivered to the United States a promissory note in the principal amount of $18,800.00 with interest thereon at 8% per annum. In this note the Manstreams agreed to pay the principal and interest in 396 installments of $136.00 per month beginning June 6, 1977 and $136.00 thereafter on the sixth day of each month until the principal and interest [was] fully paid.

On May 6, 1977 in order to secure said indebtedness the Manstreams executed and delivered to the United States a real estate mortgage on the following described real property situated in Geneva County, Alabama:

Lot 5, Block B of Twin Lakes Subdivision being in the Northeast quarter of Southwest one quarter, Section 21, Township 2 North, Range 20 East in Samson, Alabama, as shown on map and plat of same recorded in Plat Book 1, Page 125 in the Probate Office, Geneva County, Alabama.

The mortgage which was duly recorded in mortgage book 49, at pages 549–552 in the Office of the Judge of Probate, Geneva County, Alabama contained the following provisions:

"(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receivor appointed for the property, with the usual powers of receivors in like cases, (d) *foreclose this instrument as provided herein or by law,* and (e) enforce any and all other rights and remedies provid-

ed herein or by present or future law. (emphasis added)

(23) Upon default by the borrower as aforesaid, the Government and its assigns may take possession of the property and foreclose this mortgage by sale to the highest bidder, for cash, at the courthouse door of any county in which all or a part of the property is situated, after advertising the time, place and terms of sale once a week for three successive weeks in a newspaper of general circulation in each county in which a portion of the property is situated."

The plaintiff, United States of America, because of the Manstreams' failure to make the monthly payments as agreed, in March 1981 accelerated said indebtedness, declared the entire amount under the note due and payable; and on the 3rd day of September 1981 foreclosed said mortgage pursuant to the power of sale contained in the mortgage. The property securing said indebtedness was bought in at the foreclosure sale by the United States of America, Farmers Home Administration, for the sum of $24,000.00, said sum being the highest price bid. On the 14th day of September, 1981 a deed of foreclosure was executed by William E. Somerall, Acting State Director for Alabama, Farmers Home Administration, United States Department of Agriculture, acting on behalf of the United States of America, mortgagee, and as attorney in fact for David O. Manstream and Carolyn H. Manstream, his wife. The foreclosure deed was made in favor of the United States of America. The foreclosure deed was duly recorded in the Office of the Judge of Probate, Geneva County, Alabama in Deed Book 38 at pages 495–497 on the 30th day of September 1981.

On September 22, 1981 the United States of America acting through the United States Department of Agriculture, Farmers Home Administration, sent defendants a letter demanding, in accordance with Section 6–5–233, Code of Alabama 1975, that they surrender and deliver possession of said property to the United States of America within ten days. The defendants have refused to this date to surrender possession of said premises. The Manstreams on October 2, 1981 filed a case styled David O. Manstream and Carolyn H. Manstream, plaintiffs, v. United States Department of Agriculture, et al., Civil Action No. 81–109–S. The pleading was entitled "COMPLAINT AND PETITION FOR RESTRAINING ORDER". This court denied the petition for temporary restraining order on October 6, 1981, and dismissed the complaint on February 26, 1981. The Manstreams filed an appeal to the Eleventh Circuit Court of Appeals on March 18, 1982.

On November 15, 1983 the Eleventh Circuit Court of Appeals vacated the judgment of this court dismissing the complaint under Federal Rule of Civil Procedure 12(b)(6), and remanded the case for further proceedings, 720 F.2d 1292, in view of the decision of the Supreme Court in *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). Following the remand to this court the case was reinstated on the active docket.

In paragraph 3 of their complaint in Civil Action 81–109–S the Manstreams claim:

"3. Plaintiffs aver that between May 6, 1977, and May 18, 1977, upon moving into said residence, that the plaintiffs discovered numerous substantial defects in their dwelling, all or most of which would or should have been discovered by any kind of reasonable inspection. Plaintiffs aver that a complete list of said defects is contained in the exhibits attached hereto, that some of said major defects included the house being built off the slab and that there were no brick ties affixing the brick veneer to the wooden walls; substantial plumbing leaks, and others more fully set forth in the exhibits attached hereto. Plaintiffs aver these defects were immediately brought to the attention of the defendants and that both plaintiffs and defendants sought to have said contractor correct the same, all to no avail."

In paragraph 4 of their complaint plaintiffs claimed:

"4. Plaintiffs aver that on or about May 18, 1977, it was discovered that Tommy Aplin had falsified his affidavit to the defendants that all labor and materials put into said dwelling had been paid for and that on or about May 18, 1977, mechanics and materialman's liens were filed against the above-described property in the approximately sum of $6500.00. Plaintiffs aver these liens are still of record in the Office of the Judge of Probate of Houston County, Alabama but that to the Plaintiffs' best knowledge, no suit was ever filed thereon to enforce the same by said lienholders. (Documents) attached to the Manstreams' complaint show that the liens were filed in the Office of the Judge of Probate Geneva County, Alabama."

The Manstreams, in their original complaint as amended on December 1, 1981 to add the United States as a party defendant, sought the following relief: (1) in paragraph 18 an order requiring the defendants to correct said defects in accordance with their regulations, (2) in paragraph 20 an order permanently enjoining the defendants from evicting them from their residence and that the defendants' foreclosure of said mortgage be set aside, (3) in paragraph 21 damages in an amount to be determined by the court, (4) in paragraph 22 an award of attorney's fees, (5) in paragraph 25 for such other, further and different relief, both general and special, as they may be entitled in the premises.

The Manstreams on September 26, 1985 filed an amended complaint in Civil Action No. 81–109–S. In the amended complaint, filed pro se, the Manstreams in vague and conclusory terms claim that the United States Government has sought to embarrass, ridicule, and hold the plaintiffs against their will, and by threats and actions, in an environment of subjugation in violation of their rights under the 5th and 14th Amendments to the Constitution of the United States. In paragraph 2 of the complaint they allege that the United States publicly and privately ridiculed them by publishing the plaintiffs' names in local newspapers in regards to selling the house

they were living in at public outcry to the highest bidder on the courthouse steps. They claimed that the property was purchased by the government, who knowingly did so while the legality of the foreclosure was still in question. They further claimed that the United States gave a bad credit reference to their credit union. In paragraph 3 they claimed that the United States refused to allow them to bring their account current. They claimed that a Farmers Home Administration employee Rufus Sirmon, Assistant State Director at that time refused, stating, "We'll get you out of there without any more delay. We don't want your money." They claimed that this was an attempt to intimidate the plaintiffs and to put them under stress and pressure. In paragraph 4 they claim that their reputation has been damaged by the actions of the United States. In paragraph 5 they claim that the actions of the United States have caused grievous mental anguish, and as a result, physical harm to the plaintiffs. In paragraph 6 they claim that the United States through agents of the Farmers Home Administration did not offer to reevaluate their home at the interest rate or even offer to have the home repaired by another contractor that was reputable. They further claim that FmHA chose instead to delay any action at all until the statute of limitations of any tort claim the plaintiffs had, was expired."; "Then FmHA chose, (sic) threats, foreclosure, and promises that were never meant to be kept." In the amended complaint they renew their claim for damages.

In the motion to dismiss and/or in the alternative motion for summary judgment filed by the United States of America on February 19, 1986 in Civil Action No. 81–109–S, the United States, on behalf of all defendants has raised numerous affirmative defenses to the Manstreams' complaint as amended. For the reasons fully discussed below in assessing the affirmative defenses raised by the United States, there is no genuine issue of fact for trial, and the United States and all defendants are enti-

tled to summary judgment as a matter of law.

On September 3, 1985 the United States filed a two count complaint, captioned, *United States of America, plaintiff v. David O. Manstream and Carolyn H. Manstream, defendants,* Civil Action No. 85–V–1074–S.

The United States commenced this action to obtain judgment on the note executed by the Manstreams on May 6, 1977, the terms of which note are set out above. The United States also seeks judicial foreclosure of the mortgage executed by the Manstreams on May 6, 1977 in favor of the United States. Following foreclosure, if foreclosure is necessary and the United States is the successful bidder for the property at the foreclosure sale, the United States seeks an order evicting the Manstreams from said property.

The judicial foreclosure action seeks foreclosure for the second time of the property which was foreclosed on by the United States under the power of sale contained in the mortgage and the laws of the State of Alabama on September 3, 1981. The Manstreams were personally served, and filed an answer, titled, "RESPONSE TO COMPLAINT". In their answer they did not deny any of the material allegations of the United States' complaint, including personal and subject matter jurisdiction, the execution of the subject note, and mortgage, nor did they deny that they are in default under the terms of the note and mortgage by virtue of their failure to make the monthly installments due on June 6, 1977, and all subsequent installments due thereon. Instead their answer tracks word for word the complaint, allowed to be filed by this court on September 17, 1985 in Civil Action No. 81–109–S, and treated as an amendment to their original complaint. As stated above, the United States filed a motion for summary judgment in Civil Action No. 85–V–1074–S on February 20, 1986. For the reasons fully discussed below, there is no genuine issue of fact for trial and the United States is entitled to summary judgment in this case as a matter of law.

The court has considered the Manstreams' complaint as amended in Civil Action 81–109–S and their "RESPONSE TO COMPLAINT" of the United States filed in Civil Action 85–V–1074–S as an attempt to allege affirmative defenses to the foreclosure action and as a claim or counterclaim seeking injunctive relief and damages from the United States and the other named defendants. Pursuant to the mandate of the Court of Appeals the court has reviewed the Manstreams' complaint under the teaching of *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).

The United States contends that the Manstreams' claim for damages based on the alleged negligent inspection and supervision of the building of their house under the Federal Tort Claims Act is fatally defective because the Manstreams failed to file an administrative tort claim as required by the provisions of 28 U.S.C. § 2675. The Manstreams have not alleged that they filed an administrative tort claim, and indeed apparently concede that no such claim was filed. The affidavit of Ronald D. Wyatt, County Supervisor, Farmers Home Administration, Geneva County, Alabama, demonstrates that no such claim was filed. Compliance with Title 28, United States Code, § 2675(a) is a jurisdictional requisite to a suit under the Federal Tort Claims Act. It is settled law that the United States as sovereign is immune from suit unless it has consented to be sued, *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), and the United States may define the terms and conditions upon which it may be sued. *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967). The filing of an administrative tort claim under 28 U.S.C. § 2675(a) is a jurisdictional prerequisite to filing an action pursuant to the Federal Tort Claims Act. 28 U.S.C. §§ 1346, 2671, *et seq. Gregory v. Mitchell,* 634 F.2d 199 (5th Cir.1981), *Mack v. Alexander,* 575 F.2d 488, 489 (5th Cir.1978). Since the filing of a claim is a jurisdictional prerequisite, it cannot be waived. *United States v. Kubrick,* 444 U.S. 111, 117–18,

100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *Lykins v. Pointer, Inc.*, 725 F.2d 645 (11th Cir.1984). To satisfy the jurisdictional requirements "[t]here must be proof of timely written notice of the claim to the appropriate agency which appears of record." *Employees Welfare Committee v. Daws*, 599 F.2d 1375, 1378 (5th Cir.1979).

The Manstreams' claim under the Federal Tort Claims Act is also barred by the provisions of 28 U.S.C. § 2401(b). This section contains the requirement that the claim must be presented within two years after the claim accrues. This requirement is jurisdictional and cannot be waived. *Rooney v. United States*, 634 F.2d 1238 (9th Cir.1980).

■ The Manstreams' tort claim against the United States also fails because there was no duty to inspect imposed on private persons under Alabama law. The Federal Tort Claims Act (FTCA) waives, with certain exceptions, the government's traditional sovereign immunity for common law torts by government agents, 28 U.S.C. § 2674, but the source of the claim for relief must be the law of the state where the act or omission complained of occurred. 28 U.S.C. § 1346(b); *Cowart v. United States*, 617 F.2d 112, 115 (5th Cir.1980). Stated in another way under 28 U.S.C. § 1346(b) the United States is liable "for money damages, ... for injury or loss of property, ... caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2674 restricts the liability of the United States as follows: "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances,...."

The Federal Tort Claims Act (FTCA), upon which the Manstreams' suit is predicated, constitutes a limited and conditional waiver of the government's sovereign immunity. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390 (1976). The conditions of that waiver must be strictly construed by the Court. *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967). The Federal Tort Claims Act does not establish any federal standard of conduct the violation of which would result in liability of the United States. "The FTCA was not intended to redress breaches of federal statutory duties." *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir.1983). The act does not create any substantive cause of action against the United States; rather, it merely confers a procedural remedy. *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 671, 97 S.Ct. 2054, 2057, 52 L.Ed.2d 665 (1977); *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962); *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Feres v. United States*, 340 U.S. 135, 142, 146, 71 S.Ct. 153, 157, 159, 95 L.Ed. 152 (1950).

In enacting the FTCA, Congress did not grant, nor did it intend to grant, any novel cause of action enforceable against the United States, but merely waived immunity with reference to ascertainable tort claims under circumstances giving rise to specific private liability (i.e., with reference to recognized causes of action). *Stencel Aero*, 431 U.S. at 671, 97 S.Ct. at 2057; *Dalehite*, 346 U.S. at 43, 73 S.Ct. at 971; *Feres*, 340 U.S. at 142, 71 S.Ct. at 157.

Alabama law does not impose a duty on lenders to perform inspections for borrower's benefit. *Rudolph v. First Southern Federal Savings and Loan Association*, 414 So.2d 64 (S.Ct.Alabama 1982). In *Rudolph, supra* the court said:

"We hold that no duty is imposed upon a lender of a construction loan to exercise reasonable care in its inspection of the borrower's premises, even where the borrower pays the lender's inspection fee, unless the lender voluntarily undertakes to perform such inspection on behalf of and for the benefit of the borrower.

The mere relationship of lender, borrower, including the lender's right of inspection at the borrower's cost does not, of itself, give rise to a duty of due care to the borrower in the lender's exercise of that right. (For the application of an analogous principle, see *Ranger Insurance [v. Hartford Steam Boiler Inspection and Insurance Co.*, 410 So.2d 40 (Ala.1982)], *supra.*) But this principle does not prohibit the lender from voluntarily assuming a special relationship whereby the lender undertakes to perform the function of inspecting the borrower's property for the borrower's benefit.

Because the lender may exercise his independent right of inspection for its exclusive benefit, and thus incur no liability to the borrower for its negligent inspection, the burden is on the borrower, seeking to impose liability, to prove the lender's voluntary assumption of activities beyond those traditionally associated with the normal role of a money lender.

This burden of proof is met only when the evidence reasonably supports an inference of fact to the effect that the lender, either affirmatively or through a course of conduct, assumed the function of inspection expressly, though not necessarily exclusively, for the benefit of the borrower."

■ In the instant case there has been no assertion, and no evidence produced by the Manstreams to demonstrate that the FmHA assumed a special relationship whereby FmHA undertook to perform the function of inspecting the borrower's property for the borrower's benefit. The United States has filed the affidavit of Malvin Laye, one of the inspectors who inspected the Manstreams' property. He expressly states that these inspections were conducted for the benefit of Farmers Home Administration.

■ There was no express contractual obligation to perform the inspection for the benefit of the borrower. In *Neal v. Bergland*, 646 F.2d 1178, 1181 (6th Cir.1981), *aff'd* on other grounds *sub nom. Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the court held that the mere right of FmHA to inspect a supervised construction of an FmHA-financed home does not imply an obligation to do so, and, accordingly, "No contractual obligation existed on the part of FmHA to provide technical assistance or to supervise construction or to inspect." The government did not intend to make itself an insurer of the quality of the workmanship or structures funded with FmHA funds. *Neal v. Bergland*, 489 F.Supp. 512 (D.Ct. Tenn.1980), *rev'd* on other grounds 646 F.2d 1178, *aff'd* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67.

■ Alabama law would not hold a private person in the same position as the government in this case (for example, a bank or savings and loan association which had lent money to build a home and had inspected the construction) responsible for negligent construction on the part of the person or company building the home. Therefore, without a duty owed by the defendant FmHA to the plaintiffs, there can be no breach of duty and thus no claim for relief. The court further holds that where the government conducts inspections, it is not undertaking a legal duty to render services as required by the Good Samaritan Doctrine. See *Rudolph, supra. Trombetta v. United States*, 613 F.Supp. 169 (D.Ct.Mont.1985).

The Manstreams' complaint in the instant case is predicated on alleged negligent performance of "statutory duties." In performing the inspections that were performed the defendants were performing discretionary functions. The Manstreams' claim is barred by 28 U.S.C. § 2680(a). See *Youngstrom v. Dunn*, 447 F.2d 948 (8th Cir.1971); *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

The Manstreams pursued the FmHA's compensation for construction defects program under 42 U.S.C. § 1479(c). The United States asserts that this was their exclusive remedy. The Manstreams' complaint apparently alleges breach of "statutory duties" and refers to Title 5 of the Housing Act of 1949. Title 5 confers no private

right of action on borrowers who obtain financial assistance under the rural home loan program. Instead the FmHA program includes an administrative procedure by which borrowers may recover compensation for certain construction defects, and this remedy is explicitly made final and nonreviewable. Section 1479(c) provides, in pertinent part, that:

"The Secretary is authorized, after October 1, 1977, with respect to any unit or dwelling newly constructed during the period beginning eighteen months prior to October 12, 1977, and purchased with financial assistance authorized by this subchapter which he finds to have structural defects to make expenditures for (1) correcting such defects, (2) paying the claims of the owner of the property arising from such defects, or (3) acquiring title to the property, if such assistance is requested by the owner of the property within eighteen months after financial assistance under this subchapter is rendered to the owner of the property or, in the case of property with respect to which assistance was made available within eighteen months prior to October 12, 1977, within thirty-six months after October 12, 1977. Expenditures pursuant to this subsection may be paid from the Rural Housing Insurance Fund. Decisions by the Secretary regarding such expenditures or payments under this subsection, and the terms and conditions under which the same are approved or disapproved, shall not be subject to judicial review."

Under the provisions of 42 U.S.C. § 1479(b) the Secretary of Agriculture prescribed regulations implementing the construction defects program. These regulations are set forth at 7 C.F.R. § 1924.251 *et seq.*

Congress enacted this provision in 1977 to give the Secretary of Agriculture essentially the same authority held by the Secretary of Housing and Urban Development (see 12 U.S.C. § 1735b) with respect to individuals who had purchased defective houses with loans insured by the Federal Housing Administration (FHA). Rep. No. 236, 95th Cong., 1st Sess. 171–172 (1977), reprinted in 1977 U.S. Code Cong. and Ad. News 2884, 2960. The Federal Housing Administration's administrative remedy explicitly had been made final and not subject to judicial review. 12 U.S.C. § 1735b(c). Moreover, two years before FmHA received its parallel authorization, the FHA administrative remedy had been ruled to be the exclusive remedy against the United States for construction defects in homes for which the FHA insures loans. *Summers v. United States*, 510 F.2d 123, 125 (8th Cir.) *cert. denied* 423 U.S. 851, 96 S.Ct. 95, 46 L.Ed.2d 75 (1975).

In enacting FmHA's compensation for construction defects program in 1977, FmHA's program was patterned after HUD's FHA program with its limited claims exposure. H.R.Conf.Rep. No. 634, 95th Cong., 1st Sess. 70–71 (1977), reprinted in 1977 U.S.Code Cong. and Ad.News 2965, 2991.

■ Like HUD's program, FmHA's administrative remedy as finally enacted explicitly precludes appeal of the administrative remedy to the District Court. 42 U.S.C. § 1479(c). The parallel to HUD's program for remedying construction defects was obviously intended and the exclusivity of the administrative remedy naturally follows. The Manstreams are not entitled to ignore the substantive and procedural limits of this administrative remedy by means of a tort suit under the Federal Tort Claims Act. On its face, Title 5 of the Housing Act of 1949 and the regulations promulgated thereunder afford a comprehensive system for consideration of claims regarding the construction defects in FmHA-financed housing. The "principle that a more specific statute will be given precedence over a more general one, regardless of their temporal sequence" governs here and it precludes plaintiffs from relying upon a more general statute (such as the FTCA) as a predicate for the United States' liability. *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752–53, 64 L.Ed.2d 381 (1980); *Block v. North Dakota*, 461 U.S. 273, 285–286, 103 S.Ct. 1811,

1818–1819, 75 L.Ed.2d 840 (1983). This court holds that Congress intended the construction benefits program under 42 U.S.C. § 1479(c) to provide the exclusive means by which borrowers may recover compensation for construction defects on FmHA-financed housing.

■ The United States asserts that the individual defendants, the United States Department of Agriculture, and the Farmers Home Administration, cannot be sued under the FTCA. Individual actions against federal employees are often combined with claims asserted against the United States under the FTCA. Although FTCA claims may be combined with such individual claims, the individual claims must have an independent basis for jurisdiction. Suits against individuals or even federal agencies allegedly based solely upon the FTCA must be dismissed for a lack of subject matter jurisdiction. *Myers and Myers, Inc. v. United States Postal Service*, 527 F.2d 1252 (2nd Cir.1975); *Carr v. Veterans Administration*, 522 F.2d 1355 (5th Cir.1975); *Crain v. Krehbiel*, 443 F.Supp. 202, 215 (N.D.Calif.1977). The Manstreams have not alleged any independent basis for jurisdiction against the individual government employees. The docket sheet in Civil Action No. 81–109–S reflects that service was made on the United States Department of Agriculture, Farmers Home Administration.

■ Agencies of the United States cannot be sued eo nominee in suits sounding in tort. *Owyhee Grazing Association v. Field*, 637 F.2d 694 (9th Cir.1984); *Conyugal Partnership v. Gracia*, 331 F.Supp. 521 (D.P.R.1971); *Taylor v. Administrator of Small Business Administration*, 722 F.2d 105 (5th Cir.1983).

■ The Manstreams may be attempting to state a claim directly under the Constitution against the United States. The United States is immune to suit for damages based on the Constitution under a *Biven's* theory. *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. Unit B, 1982); *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir.

1982). Indeed, Justice Harlan in his concurring opinion in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 at 410, 91 S.Ct. 1999 at 2012, 29 L.Ed.2d 619 (1971) said:

"However desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit."

■ The Manstreams may be attempting to state a claim under the Civil Rights Acts, 42 U.S.C. §§ 1981–1988. They have failed to allege the statutory basis for jurisdiction in the instant case. The law of this circuit, however, is that "where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Lykins v. Pointer, Incorporated*, 725 F.2d 645, 646 (11th Cir.1984). Nevertheless in this circuit it is clear that there has been no waiver of sovereign immunity by the United States to suits based on the Civil Rights Acts. *Beale v. Blount*, 461 F.2d 1133 (5th Cir.1972); *Blaze v. Moon*, 440 F.2d 1348 (5th Cir.1971); *Penn v. Schlesinger*, 490 F.2d 700 (5th Cir.1973); *Unimex v. United States Department of Housing and Urban Development*, 594 F.2d 1060 (5th Cir.1979); *Mack v. Alexander*, 575 F.2d 488 (5th Cir.1978); *Walker v. Blackwell*, 360 F.2d 66 (5th Cir.1966); *United States v. Timmons*, 672 F.2d 1373 (11th Cir.1982).

■ The plaintiffs' complaint as amended may be an attempt to allege a claim under the Constitution against the named federal officials in their individual capacities. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of a conspiracy to violate constitutional rights. *Fullman v. Graddick*, 739 F.2d 553 (11th Cir.1984); *Hutchinson v. United States*, 677 F.2d 1322, 1327–1328 (9th Cir.1982); *Krohn v. United States*, 742 F.2d 24–29 (1st Cir.1984); *Hobson v. Wilson*, 737 F.2d 1, 29–31 (D.C.Cir.1984); *Elliott v. Perez,*

751 F.2d 1472 (5th Cir.1985); *Ostrer v. Arenwold,* 567 F.2d 551, 553 (2nd Cir.1977).

■ The Manstreams claim that the individual defendants negligently inspected their home and as a result they were damaged. It is absolutely clear that the Manstreams' claim for damages against the individual defendants based on negligence are barred by the Doctrine of Absolute Immunity. *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Evans v. Wright,* 582 F.2d 20 (5th Cir. 1978); *Johns v. Pettibone Corporation,* 755 F.2d 1484, 1486 (11th Cir.1985); *Garcia v. United States,* 666 F.2d 960, 962 (5th Cir. Unit B, 1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Claus v. Gyorkey,* 674 F.2d 427 (5th Cir. 1982). The Manstreams have not alleged a constitutional tort. All of their allegations against the individual defendants are based on common law torts. The applicable law is clear, absent an allegation of a tort of constitutional magnitude, federal officials are entitled to absolute immunity for ordinary torts committed within the scope of their jobs. The affidavit of Dale N. Richey, State Director, Farmers Home Administration, United States Department of Agriculture, Montgomery, Alabama, demonstrates that the individually named defendants, Ronald D. Waytt, Malvin Laye, John G. Rea, and Keith Geis, were all employees of the United States Department of Agriculture and all of the actions taken by these individuals were duly performed by them within the scope of their employment as official employees of the Farmers Home Administration, United States Department of Agriculture. In *Claus v. Gyorkey,* 674 F.2d 427, 431 (5th Cir.1981), the court said:

"The district court here properly summarized the law on absolute immunity:

It is only necessary that the action of the federal official bear some reasonable relation to and in connection with his duties and responsibilities to be within the scope of his authority. *Scherer v. Brennan,* 379 F.2d 609, 611 (7th Cir.1967), *cert. denied* 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967)."

■ The Manstreams claim in paragraph two of their amended complaint that the United States foreclosed on their mortgage in September 1981, and purchased the property at the foreclosure sale, "while the legality of the foreclosure was still in questions." No court to this date has held that nonjudicial foreclosure of mortgages by FmHA under Alabama law violates plaintiffs' due process rights. In *Gabriel Johnson v. United States Department of Agriculture,* 734 F.2d 774 (11th Cir.1984), the Circuit Court of Appeals discussed the requirements of the due process clause that must be met by the government in foreclosing a mortgage given to secure an FmHA loan. The court did not hold that nonjudicial foreclosure under Alabama law would violate due process. The court in *Johnson, supra* at page 783, footnote 7 said:

"7. There is no right to non-judicial foreclosure, only a right to due process. Therefore, if the FmHA procedure affords due process a validly executed power of sale provision is not constitutionally required. A judicial foreclosure proceeding gives the borrower more rights than the FmHA appeal and hearing process. Judicial proceedings would occur automatically, would be before a federal magistrate or district judge, and would have lawyers representing both sides. Additionally, the burden of proof in a judicial proceeding is on the FmHA to show that they followed all applicable rules and regulations and that the borrower is in default. In an FmHA proceeding the burden of proof is on the borrower to show that the FmHA acted in error. Because a judicial foreclosure gives the borrower these additional protections not available in the FmHA proceeding, when a borrower signs the power of sale provision he is waiving the right to certain processes. Even if we find that the FmHA's procedure meets the due process minimum, borrowers are waiving

other processes in the power of sale. Due process requires only an opportunity for a hearing whereas judicial foreclosure requires the hearing."

By judicially foreclosing the Manstreams' mortgage the United States has met all of the due process requirements that are set out in the Court of Appeals' decision. With the affidavit of James H. Ozment, Housing Loan Specialist, State Office, Farmers Home Administration, United States Department of Agriculture, Montgomery, Alabama, filed herein, the FmHA meets the burden of proof required in a judicial proceeding to show that they followed all applicable rules and regulations. Paragraph 8 of this affidavit states:

"8. I can certify that all actions taken by Farmers Home Administration in connection with said mortgage indebtedness were taken in accordance with the regulations promulgated by the Secretary of Agriculture, within his authority under appropriate federal statutes."

In Ozment's affidavit and Ronald D. Wyatt's affidavit filed herein the government has met its burden of proving that the borrower is in default. The Manstreams have not filed any affidavits in opposition to the affidavits filed by the United States in support of its motions for summary judgment in these consolidated cases.

The Manstreams claim that FmHA officials have damaged their reputation. This claim is barred by 28 U.S.C. § 2680(h). The United States has not waived its sovereign immunity to a claim for damages based on libel or slander. The Manstreams apparently claim that FmHA officials ridiculed them by publishing the foreclosure notice in local newspapers as required by law. This claim is absolutely without merit. The publication of the foreclosure notice was in accordance with the terms of the mortgage and with Alabama law. Had the Manstreams not defaulted in the payments of their note no foreclosure would have been required. There would have been no publication of a foreclosure notice.

Therefore in accordance with the opinion entered above, it is

ORDERED by this court that the summary judgment motion filed on behalf of all defendants in Civil Action No. 81–109–S is granted; that the tort claims against the United States are dismissed; that the constitutional claims against the United States are dismissed; that the tort claims and constitutional claims against the United States Department of Agriculture; the Farmers Home Administration; Ronald D. Wyatt; John G. Rea; Malvin Laye; Keith Geis; Dale N. Richey as State Director of the Farmers Home Administration; and Gordon Cavanaugh, as Administrator of the Farmers Home Administration, United States Department of Agriculture, are dismissed; that all claims are dismissed with prejudice, and it is

ORDERED by this court that the summary judgment motion filed on behalf of the United States of America, plaintiff in Civil Action No. 85–V–1074–S is granted. A separate decree of foreclosure will be filed by the court in Civil Action No. 85–V–1074–S simultaneously with the filing of this opinion and order.