**Clyde E. WILLIAMSON, d/b/a Triangle 44 Farms, Plaintiff-Appellant,**

**v.**

**UNITED STATES DEPARTMENT OF AGRICULTURE, et al., Defendant-Appellees.**

No. 86–4314.

United States Court of Appeals, Fifth Circuit.

April 29, 1987.

Eugene A. Booth, Baton Rouge, La., John E. Mulhearn, Jr., Natchez, Miss., for plaintiff-appellant.

Raymond W. Fullerton, Atty., Dept. of Agriculture, Office Gen. Counsel, Washington, D.C., George Phillips, U.S. Atty., Dan M. McDaniel, Jr., Danhy L. Woodyard, Asst. U.S. Attys., Jackson, Miss., for defendants-appellees.

Before WILLIAMS, JOLLY and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant Clyde Williamson appeals the dismissal of his claims against the Department of Agriculture and several federal government officials for deprivation of property without due process of law, tortious interference with contract, and misrepresentation. The district court had granted the government's motion for summary judgment. Williamson's appeal exposes the tension between the need to protect government officials from the misplaced wrath of citizens disappointed by the actions of the officials, and the need to protect those citizens whose disappointment is alleged to be a constitutional injury. We resolve that tension in this case in favor of the government and its officials, and therefore affirm the judgment of the district court dismissing Williamson's claims.

## I. *The Facts*

Appellant Clyde Williamson was a farmer in Adams County, Mississippi. Beginning in April, 1978, appellant applied for and received eleven loans from the Farmers Home Administration (FmHA) totalling $963,110.00. As of September 20, 1985, appellant owed FmHA $616,851.26, with interest accruing on his account at a daily rate of $122.00.

On March 8, 1981, appellee Joe Dockins was appointed FmHA County Supervisor in Adams County. At his first meeting with appellant, appellant told him he had sold his 1980 soybean crop and had used the proceeds to pay advance rent for 1981 on his farm. Dockins pointed out to appellant that those proceeds had been pledged to FmHA to repay his 1980 crop loans, and that appellant had been entitled to pay only his 1980 rent out of the proceeds before paying FmHA. Finally, according to appellant, Dockins said that he intended to run appellant out of business.

Appellant's 1980 soybean crop had been sold to Concordia Grain Co. in Vidalia, Louisiana, under the name of appellant's wife, Donna Williamson. Her name did not appear on Concordia's list of FmHA financed farmers, although the name "Clyde Williamson" and the name of his company, "Triangle 44 Farms," did appear on the list. Dockins subsequently asked Concordia to repay the proceeds of the sale. Appellant asserts that, as a result, Dockins caused Concordia to pay to FmHA funds to which the agency was not entitled. These funds had been earmarked by appellant for repayment of loans he had received from First Natchez Bank in Natchez, Mississippi, for his 1981 crop. Appellant asserts that Dockins' actions caused him to default on his loan from First Natchez.

Appellant also alleges that Dockins "maneuvered" him into selling Smithland Plantation at this time. Dockins testified that he simply had agreed to release an FmHA lien on the property to allow the sale to occur, and had offered appellant his opinion that the land was being sold at a good price. Appellant alleges that the sale of this property contributed to his subsequent ineligibility for FmHA loans.

Because appellant had violated the covenants of his 1980 security agreement with FmHA, the FmHA Mississippi State Office informed Dockins on May 9, 1981, that appellant's 1981 loan application would not be processed. Four days later, Dockins and appellee Kent, FmHA District Director for Southwest Mississippi, recommended to the FmHA State Office that appellant receive his 1981 loans despite his technical ineligibility. We note that this recommendation came after, according to appellant, Dockins had told him that he was going to be run out of business. Appellant filed complaints concerning his ineligibility with FmHA, and with his congressman and senators. Subsequently, appellant's loans were approved, and he borrowed $301,760.00 on June 23, 1981.

Because of this delay in his 1981 funding, and because Adams County was considered a disaster area for the 1980 crop year, appellant applied for a disaster loan from the Small Business Administration (SBA). Appellant claims, and appellees deny, that Dockins subsequently informed SBA that appellant "did not want" the disaster loan for which he had been approved. It appears from a review of the record that appellant never received an SBA disaster loan.

In late 1981, Dockins and appellant prepared an FmHA plan for use by appellant in applying for his 1982 loans. At this time, appellant signed over to FmHA a check for the proceeds of his 1981 crop. FmHA had a lien on those proceeds, obtained as security for the 1981 loans. Appellant claims that he signed over the check in reliance on Dockins' promise that he would receive his 1982 loans. Dockins denies having ever made such a promise. After preparing the plan, Dockins determined that appellant was not eligible for 1982 FmHA loans. Under the then-applicable agency guidelines, appellant's history of past production and expenses demonstrated a lack of repayment ability. Appellant requested and got a meeting with Doc-

kins' supervisor, appellee Kent, who reached the same conclusion.

Subsequently, FmHA changed its guidelines for loan eligibility, removing various restrictions that had previously rendered appellant ineligible. After the change, appellant was tentatively approved for a 1982 loan in the amount of $225,000.00. Before the loan was to be closed on March 23, 1982, however, a lien search by FmHA revealed that Mississippi Federated Cooperative (MFC) had filed a judgment against appellant on March 22 for $60,000.00. Dockins and Kent testified that they had asked MFC to wait until appellant's loan was closed before it filed the judgment, but that MFC refused to cooperate. Once the lien was discovered, appellant was once again ineligible for his FmHA loan. Several months later, MFC still refused to subordinate its lien so as to allow FmHA to close its loan with appellant.

On April 2, 1982, one of appellant's landlords called Dockins to inquire about the status of appellant's 1982 loans, explaining that appellant owed her $32,000.00 rent. Dockins refused to release any information to the landlord, and had no other contact with her. Appellant claims that Dockins told the landlord that appellant would not be able to work the farm in question, at which point the landlord obtained an injunction keeping appellant off the farm. As a result, appellant claims, he was unable to recover his crops, seed, chemicals, fuels, and trucks that remained on the farm.

In early 1983, appellant applied for FmHA loan assistance once again. On February 10, 1983, the Mississippi State Office turned down his application because he could not demonstrate sufficient cash flow. On February 23, the State Office decided to "accelerate" appellant's account because of the number of his loans which were past due. At that point, the full amount of all of appellant's FmHA loans became due and payable immediately. Appellant was given notice of his right to appeal the acceleration, and he did so. On August 15, 1983, a hearing officer upheld the State Director's decisions, whereupon appellant requested a review by the Deputy Adminis-

trator of FmHA in Washington. On October 26, 1983, the FmHA National Office found no basis for overturning the decisions of the State Office to deny appellant's 1983 loan request and to accelerate his account.

Appellant also claims that during the period described above, Dockins falsified crop yield reports to indicate that appellant's fields would yield more than they actually yielded. Further, appellant claims that Dockins accused him of failing to account for his crop insurance proceeds, when Dockins knew that those proceeds had been paid to First Natchez Bank.

On March 1, 1983, appellant filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi. On May 17, 1983, FmHA filed a proof of claim in the Bankruptcy Court in the amount of $506,130.88 against Clyde Williamson, d/b/a Triangle 44 Farms. Appellant asserts that this proof of claim lists loans he never received and fails to credit his account for hundreds of thousands of dollars actually paid to FmHA.

Appellant subsequently filed suit on December 17, 1984, against appellees United States Department of Agriculture (USDA); FmHA; John Block, the Secretary of Agriculture; James Perry, Don Barrett, and John Author, individually and as past and present FmHA Mississippi State Directors; Dan Mattox, individually and as Assistant FmHA Mississippi State Director; Henry Magnum, individually and as Mississippi Chief of FmHA Programs; Wesley Kent, individually and as FmHA District Director for Southwest Mississippi; and Joe Dockins, individually and as Adams County FmHA Supervisor. Appellant claimed that these officials were amenable to suit under the Federal Torts Claims Act, 28 U.S.C. §§ 2671–80, and were liable for committing common-law torts against him: interfering with his contracts with third parties, misrepresenting to him and to others the probability of his receiving federal loans, and, generally, committing a series of negligent and intentional acts designed to force ap-

pellant into bankruptcy. Further, appellant requested relief for violation of his constitutional rights, claiming that appellees had committed a series of constitutional torts by depriving him of his property without due process of law.

Appellant's suit was filed as an adversary proceeding in the Bankruptcy Court. Appellees filed a Petition for Retention of Jurisdiction with the United States District Court for the Southern District of Mississippi and obtained a stay of discovery pending resolution of that petition. On September 19, 1985, the district court rendered its decision to retain jurisdiction. On September 30, appellees filed a Motion to Dismiss, and on October 11, they obtained a second stay of discovery pending a ruling on that motion. On April 11, 1986, the district court, ruling on the Motion to Dismiss as a Rule 56 Motion for Summary Judgment, granted summary judgment for appellees on all appellant's claims. *Williamson v. United States Department of Agriculture*, 635 F.Supp. 114 (S.D.Miss.1986).

Appellant instituted this timely appeal.

## II. *Standard of Review*

In reviewing the summary judgment, we must consider the full record of the case to determine if "there is [any] genuine issue as to any material fact and [if] the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). In doing so, of course, we "must view the evidence in the light most favorable to the party resisting the motion" for summary judgment. *Simon v. United States*, 711 F.2d 740, 743 (5th Cir.1983).

■ Appellant also claims reversible error in the failure of the district court to permit discovery in this case prior to its granting the motion for summary judgment. "Control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable." *Mayo v. Tri-Bell Industries, Inc.*, 787 F.2d 1007, 1012 (5th Cir.

1986); *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir.1985); *Perel v. Vanderford*, 547 F.2d 278, 280 (5th Cir. 1977). Yet if discovery could uncover one or more substantial fact issues, appellant was entitled to reasonable discovery to do so. *Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir.), *reh'g denied*, 707 F.2d 515 (5th Cir.1983).

Finally, appellant complains that the district court, in ruling on appellees' motion for summary judgment, considered affidavits that were inadmissible as evidence. Review of this alleged error is also limited to a search for an abuse of discretion. *In re Air Crash Disaster Near New Orleans, La., on July 9, 1982*, 764 F.2d 1084, 1090 (5th Cir.), *reh'g denied*, 770 F.2d 164 (5th Cir.1985); *Jon-T Chemicals v. Freeport Chemical Co.*, 704 F.2d 1412, 1417 (5th Cir.1983).

## III. *The Federal Tort Claims Act*

The district court dismissed appellant's claims against the USDA, FmHA, and the individual appellees in their official capacities because each of those appellees were protected by sovereign immunity. We agree with the ruling of the district court.

■ The doctrine of sovereign immunity is inherent in our constitutional structure and is in part enshrined by the Eleventh Amendment. It renders the United States, its departments, and its employees in their official capacities as agents of the United States immune from suit except as the United States has consented to be sued.[1] While it is "[d]ecried as irrational and immoral by some, ... criticized on historical grounds by others, ... recognized by all to have little doctrinal coherence, the doctrine of sovereign immunity has nonetheless retained the endorsement of the two institutions that matter—the Supreme Court and Congress." *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 303 (5th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). The

---

1. The doctrine has its origins in the maxim, "Rex non potest peccare" ("The King can do no wrong.").

Supreme Court has held repeatedly that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), *quoting United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). *See also Stanton v. United States*, 434 F.2d 1273, 1275 (5th Cir.1970) ("Thus the district courts' jurisdiction over the United States depends entirely upon the terms of the congressional waiver of sovereign immunity.").

■ One of the vehicles by which the United States has consented to be sued is the Federal Torts Claims Act, 28 U.S.C. §§ 2671–80. The statute provides broadly that the United States will accept liability for common torts committed by its agents to the same extent and in the same manner as liability would attach to a private individual in similar circumstances. *United States v. Orleans*, 425 U.S. 807, 813, 96 S.Ct. 1971, 1975, 48 L.Ed.2d 390, 297 (1976); *Thomas v. Calavar Corp.*, 679 F.2d 416, 418 (5th Cir.1982). The consent to be sued upon claims arising from " 'the negligent or wrongful act or omission' by an officer or employee of the federal government acting within the scope of his employment," *Williamson, supra*, 635 F.Supp. at 116, *citing* 28 U.S.C. § 2672, is peppered with exceptions, however, which we are bound to apply rigorously. *Sherwood, supra*, 312 U.S. at 590, 61 S.Ct. at 771, 85 L.Ed.2d at 1063; *Ware v. United States*, 626 F.2d 1278, 1286 (5th Cir.1980). The district court held that appellant's claims were not covered by the FTCA's waiver because they fell into exceptions created by §§ 2680(a) and (h), and also that appellant had failed to satisfy the administrative exhaustion requirements of 28 U.S.C. § 2675(a). We address these findings in turn.

### (a) § 2680(a)

One of the limitations in the FTCA upon the waiver of sovereign immunity is found in 28 U.S.C. § 2680(a), which provides that sovereign immunity shall not be waived with respect to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court carefully examined the contours of this section of the FTCA in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and concluded that:

> the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable.

346 U.S. at 35–36, 73 S.Ct. at 968 (footnotes omitted). The scope of the exception was thus early interpreted so broadly that this Circuit was prompted to issue the following caveat:

> [i]f the Torts Claims Act is to have the corpuscular vitality to cover anything more than automobile accidents in which government officials were driving, the federal courts must reject an absolutist interpretation of *Dalehite* ...

*Smith v. United States*, 375 F.2d 243, 246 (5th Cir.1967).

Thus the courts began the difficult task of divining the boundaries of governmental discretion. Some courts emphasized the relative simplicity of asking whether the government-defendant was acting in a planning or policy-making role, or in an

operational or policy-implementing role.[2] This Court focused more upon a broader inquiry into "the nature and quality of the discretion involved." *Id.* at 246.[3] This broader inquiry was recently endorsed by the Supreme Court in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). *Empresa* shed light on "several factors useful in determining when the acts of a Government employee are protected from liability by § 2680(a)." *Id.,* 467 U.S. at 813, 104 S.Ct. at 2764. The Court emphasized that

> it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.... Thus, the basic inquiry concerning the application of the discretionary function is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

*Id.*[4]

■ In this case, the challenged acts of the various FmHA officials involve the granting, administration, and denial of various FmHA Operating Loans and FmHA Emergency Loans. These actions are unmistakably committed to the discretion of the Secretary of Agriculture by the Consolidated Farm and Rural Development Act, Pub.L. 87–128 (codified as amended at 7

U.S.C. §§ 1921–2000). The statute is replete with discretionary responsibilities. It grants the Secretary the power "to make and insure" Operating Loans to farmers that "have either training or farming experience that the Secretary determines is sufficient to assure reasonable prospects of success in the proposed farming operations," 7 U.S.C. § 1941(a), and the power "to make and insure" Emergency Loans to farmers that "have experience and resources necessary to assure a reasonable prospect for successful operation with the assistance of such loan[s]." 7 U.S.C. § 1961(a).

The Secretary is also given the authority to "compromise, adjust, or reduce claims, and adjust and modify the terms of mortgages, leases, contracts, and agreements entered into or administered by the Farmers Home Administration under any of its programs, as circumstances may require...." 7 U.S.C. § 1981(d). There is also discretionary power to "release mortgage and other contract liens if it appears that ... their enforcement likely would be ineffectual or uneconomical." 7 U.S.C. § 1981(f). The Secretary has further power to "consent to the transfer of property securing any loan or financed by any loan or grant made, insured, or held by the Secretary under this chapter ... upon such terms as he deems necessary to carry out the purpose of the loan or grant or to

---

**2.** *See, e.g., Nevin v. United States,* 696 F.2d 1229, 1230 (9th Cir.) ("[W]hether an act or omission falls within the exemption depends generally on whether that act or omission occurred at the planning level or the operational level of government."), *cert. denied,* 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983); *Gross v. United States,* 676 F.2d 295, 302 (8th Cir.1982) ("The discretionary function exception covers only decisions made at the policy or planning level. ... Decisions made at the operational level may still be actionable even though they involve an element of discretion.").

**3.** We specifically noted in *Smith, supra,* 375 F.2d at 246, that the application of § 2680(a) is "a difficult process [that] is not aided by importation of the planning stage-operational stage standard.... Such a distinction is specious. It may be a makeweight in easy cases where of course it is not needed, but in difficult cases it

proves to be another example of a distinction 'so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation.' Mr. Justice Frankfurter for the Court in *Indian Towing* [*v. United States,* 350 U.S. 61, 68, 76 S.Ct. 122, 126, 100 L.Ed. 48, 55 (1955) ]. Such nonstatutory 'aids' to construction tend to obscure, to limit, or even to replace the standards whose meaning they are supposed to clarify."

**4.** The Court went on to note that the FTCA's legislative history's "emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." 467 U.S. at 814, 104 S.Ct. at 2764–65.

protect the financial interest of the Government." 7 U.S.C. § 1981(i).

There is ample judicial precedent that the granting and denying of Operating Loans and Emergency Loans by FmHA are acts that Congress intended to place behind the shield provided by the discretionary exception to the FTCA. In *Teupker v. Farmers Home Administration*, 708 F.2d 1329, 1332 (8th Cir.1983), the Court held that FmHA's decision to deny Teupker's requests for additional emergency loans was "a qualitative, subjective decision based on agency expertise within the bounds of the statutory directive ..." As a result, the Court found that Teupker's FTCA claims were "barred under the Act's exception for discretionary actions." *Id.* at 1333. In *Matzke v. Block*, 564 F.Supp. 1157, 1166 (D.C.Kan.1983), *aff'd in part, rev'd in part*, 732 F.2d 799 (10th Cir.1984), the district court found that "the administration of a farm loan program necessarily entails broad discretion in the application of objective and subjective factors to individual circumstances." [5] *See also, Lathan v. Block*, 627 F.Supp. 397 (D.C.N.D.1986) (FmHA decisions as to the protection of FmHA interests in secured property constitute discretionary decisions under the FTCA). [6]

This discretion granted to the Secretary of Agriculture is properly delegated to and is exercised by other FmHA officials, including the County Supervisor and his superiors. Department of Agriculture regulations provide that the types of FmHA loan applications made by appellant shall be approved or denied in the first instance by the County Supervisor and the County Committee. 7 C.F.R. § 1910.4. Congress deemed that the relative experience and training of farmers and their prospects for economic success should be factors in determining loan eligibility. The Secretary of Agriculture, in turn, decreed that the County Committee and the County Supervisor "will determine eligibility." 7 C.F.R. § 1910.4(c). Unmistakably those officials are responsible for exercising the statutory discretion Congress gave to the Secretary. *See Poolman v. Nelson*, 802 F.2d 304 (8th Cir.1986). We hold that all the appellees in this case had responsibility for the exercise of discretion within the meaning of § 2680(a). [7]

We agree with the district court that the "discretionary function exemption affords the government a defense where there is room for policy judgment and decision making where, as here, loan eligibility, processing and servicing is involved." *Williamson, supra*, 635 F.Supp. at 116. Appellant's claims regarding loans either made or denied him, asserted against the United States, its agencies, and the individual defendants in their official capacities, cannot be maintained under the FTCA and are therefore barred by sovereign immunity.

### (b) *§ 2680(h)*

A second limitation to the FTCA's waiver of sovereign immunity is found in 28 U.S.C. § 2680(h), which provides that sovereign immunity shall not be waived with respect to:

5. On appeal, the Tenth Circuit held that the Secretary of Agriculture was without discretion to withhold implementation of the FmHA loan deferral program, but did not disagree with the district court's conclusion that the Secretary exercised discretion within the program in deciding whether to defer particular loans. *Matzke*, 732 F.2d at 801.

6. *Teupker* and *Lathan*, as well as the instant case, are distinguishable from recent cases holding that FmHA's practices and regulations implementing its deferral relief program violate due process. *See, e.g., Curry v. Block*, 738 F.2d 1556 (11th Cir.1984); *Allison v. Block*, 723 F.2d 631 (8th Cir.1983); *United States v. Hamrick*, 713 F.2d 69 (4th Cir.1983). Like the Tenth Circuit's *Matzke* decision (see footnote 5, *supra* ),

these cases concern the provisions for notice and opportunity to be heard upon the denial of a loan deferral, but do not reduce the discretion of the Secretary to determine whether any particular farmer is eligible to receive such a deferral.

7. Further support for our holding can be found in Exhibit A to appellee Dockins' affidavit, the Department of Agriculture's job description for the position of "Agricultural Management Specialist, GS–11, County Supervisor." The description identifies as the responsibility of the County Supervisor the duty to "make and service loans" and details 10 responsibilities a supervisor discharges, most of which involve exercises of discretion.

[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights....

The district court found that those claims against the United States, its agencies, and the individual defendants in their official capacities which were not already barred by § 2680(a) were barred by § 2680(h): interfering with appellant's contracts with his landlord; interfering with appellant's contracts with First Natchez Bank; misrepresenting the productive capabilities of his farm; misrepresenting the extent of FmHA interest in his property; and misrepresenting the probability of appellant's obtaining FmHA loans upon the disposition of various pieces of his property.

[6] In *Kosak v. United States*, 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), the Supreme Court noted that a court's task in applying § 2680(h) is "to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." 465 U.S. at 853, n. 9, 104 S.Ct. at 1523, n. 9 (citation omitted). The words and reason, in turn, of the misrepresentation exception within § 2680(h) were clarified in *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In *Neal*, the Court reaffirmed its earlier interpretation of § 2680(h) as relieving the government of tort liability for pecuniary injuries attributable to reliance on negligent or intentional[8] misstatements by the government. *Id.*, 460 U.S. at 296–97, 103 S.Ct. at 1093–94.[9] In other words, failure

of the government to use due care in conveying information is not actionable under the misrepresentation exception. The Court held that § 2680(h) did not apply, however, when the government's failure to use due care constitutes a breach of a separate, independent duty.[10]

Several courts have faced the task of drawing the distinction set out in *Neal*.[11] The most in-depth analysis is found in *Metz v. United States*, 788 F.2d 1528 (11th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 400, 93 L.Ed.2d 353 (1986). That case involved the termination of a federal employee undergoing psychiatric evaluation. The Eleventh Circuit reviewed whether the employee's claims for false light, intentional infliction of emotional distress, and intrusion into seclusion "arose out of" torts listed in § 2680(h), as interpreted by *Neal*.[12] The court determined that

a cause of action which is distinct from one of those excepted under § 2680(h) will nevertheless be deemed to "arise out of" an excepted cause of action when the underlying governmental conduct which constitutes an excepted cause of action is "essential" to plaintiff's claim.

788 F.2d at 1534. Applying that standard, the *Metz* Court found all the plaintiff's claims barred by § 2680(h).

■ We also find that appellant's claims regarding acts of misrepresentation are barred by § 2680(h). Appellant points to no duty of the government or its agents to characterize the productive capacity of appellant's farmland apart from the duty to use due care in making such a character-

---

**8.** This Circuit has long applied § 2680(h) to both negligent and intentional misrepresentations. *See, e.g., Rey v. United States*, 484 F.2d 45, 49 (5th Cir.1973).

**9.** The Court concluded that Congress intended the term "misrepresentation" in § 2680(h) to be interpreted according to the traditional common law definition of the tort of misrepresentation. *Id.*, 460 U.S. at 296, 103 S.Ct. at 1093.

**10.** In *Neal*, the FmHA breached not only its duty to use due care in conveying information, but also its duty to supervise properly the construction of the plaintiff's home. 460 U.S. at 297, 103 S.Ct. at 1094. Since government misrepresentation was not essential to plaintiff's negligence

claim for failure to supervise, the Court held that the claim was not barred by § 2680(h).

**11.** *See Hamre v. United States*, 799 F.2d 455 (8th Cir.1986) (holding that claims against a government appraiser were claims for misrepresentation, and thus barred by § 2680(h)); *Carolinas Cotton Growers Ass'n v. United States*, 785 F.2d 1195 (4th Cir.1986) (holding that claims against the government for improperly grading plaintiff's cotton were barred by § 2680(h)).

**12.** The *Metz* Court relied on *Kosak v. United States, supra,* for the proposition that the words "arising out of" in § 2680 should be construed broadly. *Kosak* specifically dealt with § 2680(c).

ization. Regarding FmHA's alleged statement of its interest in appellant's soybean crops and its alleged promise to provide loans if he sold some land, appellant's claim for damages rests upon the allegations that these were misrepresentations, and they did not reflect the truth. No independent duty is even mentioned. Appellant makes no claims arising out of these facts that are not dependent upon an allegation that the government made misrepresentations and sovereign immunity has not been waived as to misrepresentations.

As for the exception involving interference with contract rights, the words of and reasons for that exception under § 2680(h) are plain. *See, e.g., Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151 (D.C.Cir. 1985) (holding that claims of interference with prospective advantage are barred as claims for interference with contract rights); *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182 (9th Cir.1982) (barring claims for tortious interference with contract). Here, appellant asserts that appellees interfered with his contract to rent farmland from his landlord, and that appellees interfered with his loans obtained from First Natchez Bank, causing him to default on those loans. These claims fall within the plain meaning of the statutory exception and are barred by § 2680(h).[13]

In conclusion, we hold that appellant's claims regarding misrepresentations and interference with contract rights, asserted against the United States, its agencies, and the individual defendants in their official capacities, cannot be maintained under the FTCA and are therefore barred by sovereign immunity.

### (c) *§ 2675(a)*

■ Even if appellant's claims were not barred by §§ 2680(a) and (h), they would be barred for appellant's failure to exhaust his administrative remedies before asserting his claims in federal court. Since we find the claims barred substantively, we note this default by appellant only in passing. 28 U.S.C. § 2675(a) provides in pertinent part that "[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." The district court found that appellant had failed to satisfy the requirements of § 2675(a). *Williamson, supra,* 635 F.Supp. at 116. No evidence counters this finding. We therefore affirm the district court's determination that appellant's FTCA claims against appellees also fail to satisfy that statute's procedural requirements.

As to all FTCA claims, we find that they all involve discretionary acts, alleged misrepresentations, and alleged interference with contract rights, and that appellant also failed to satisfy the administrative exhaustion requirements of § 2675(a). We therefore affirm the summary judgment in favor of the United States, its agencies, and the individual defendants in their official capacities regarding all common-law torts alleged in appellant's complaint.

### IV. *Individual Immunity*

■ Appellant's claims run against not only the United States and its officers in their capacities as agents of the United States, but also against those officers personally. Sovereign immunity does not shield the individual appellees in their individual, as opposed to their official, capacities. *White v. Franklin,* 637 F.Supp. 601, 612 (N.D.Miss.1986); *Keese v. United States,* 632 F.Supp. 85, 92 (S.D.Tex.1985). We look, therefore, to other considerations to resolve the tension between protecting government officials from suit and protecting the citizens they serve from tortious

---

**13.** Appellant claims that the contract rights referred to in § 2680(h) are limited to contracts to which the United States is a party. Appellant cites *United States v. Smith,* 324 F.2d 622 (5th Cir.1963), which, in fact, establishes the opposite proposition: interference by the government with contract rights existing between the government and an FTCA plaintiff is merely breach of contract, not a tort at all. Thus, § 2680(h) only applies to contracts to which the government is not a party, because only interference with those contracts gives rise to an action sounding in tort.

wrongs. The danger to effective government is that "fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), *quoting Gregoire v. Biddle,* 177 F.2d 579, 581 (2nd Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The Supreme Court, therefore, has embraced the doctrines of absolute and qualified immunity for federal officials.[14]

■ We have often reviewed and explained the intricacies of these immunity doctrines. We do not need to consider the scope of the narrower qualified immunity as it relates to the allegations of common law torts in this case. The FmHA officials were entitled to absolute immunity. When federal officials are charged with the commission of common-law torts, they

> enjoy absolute immunity from ... liability for actions [taken] within the scope of their authority. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Claus v. Gyorkey,* 674 F.2d 427 (5th Cir.1982). This absolute immunity does not hinge on a functional analysis as with constitutional torts. *See id.* at 431; *Evans v. Wright,* 582 F.2d 20 (5th Cir.1978).... All that is necessary is that "'the action of the federal official bear some reasonable relation to and connection with his duties and responsibilities ...,'" *Claus v. Gyorkey,* 674 F.2d at 431, *quoting Scherer v. Brennan,* 379 F.2d 609, 611 (7th Cir.1967), *cert. denied,* 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666, and that the action of the official is connected with a "discretionary function." *Norton v. McShane,* 332 F.2d 855 (5th Cir.1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965).

*Williams v. Collins,* 728 F.2d 721, 727 (5th Cir.1984). *See also Lage v. Thomas,* 585 F.Supp. 403 (N.D.Tex.1984); *OKC Corp. v. Williams,* 489 F.Supp. 576 (N.D.Tex.), *aff'd* 614 F.2d 58, *reh'g denied* 617 F.2d 1207, *cert. denied,* 449 U.S. 952, 101 S.Ct. 357, 66 L.Ed.2d 216 (1980). Furthermore, allegations of malice on the part of the federal official are irrelevant for purposes of determining the availability of absolute immunity. *Barr v. Mateo, supra,* 360 U.S. at 575, 79 S.Ct. at 1341; *Williams v. Collins, supra,* 728 F.2d at 728.

The absolute immunity doctrine has often been used to shield officials of FmHA from common-law tort liability. In *Poolman v. Nelson,* 802 F.2d 304 (8th Cir.1986), the Court considered a suit by disgruntled FmHA loan applicants. The Poolmans had applied for an FmHA loan, and had made various agreements with third parties based on the promise of an FmHA County Supervisor that they would receive the loan. Their application was denied, however, and they sued. The Court reviewed the functions and duties of the FmHA County Supervisor, and concluded that the Supervisor's "wide ranging authority ... over FmHA matters in the county or counties he supervises," 802 F.2d at 309, sufficed to place the conversations he held with the Poolmans "within the outer perimeter of the official's line of duty." *Id.* *See also Carson v. Block,* 790 F.2d 562 (7th Cir.) (holding that FmHA officials had absolute immunity in suit based on their refusal to defer loan repayments), *cert. denied,* — U.S. —, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986); *Ortiz v. United States,* 661 F.2d 826 (10th Cir.1981) (holding that FmHA officials had absolute immunity in a suit for misrepresentation and for negligent supervision of construction); *Owyhee Grazing Ass'n, Inc. v. Field,* 637 F.2d 694

**14.** In the age of law and economics, there has been an assay toward explaining the doctrine of official immunity in terms of the principles of risk-aversion and profit maximization. *E.g. Carson v. Block,* 790 F.2d 562, 564 (7th Cir.) (Easterbrook, J.) ("Private firms may buy insurance for their employees, or give them bonuses or shares of the enterprise to induce them to take risks. The United States does not offer the Secretary of Agriculture a 'share of the profits' from federal programs awarding subsidies, and a system under which officials face risks of substantial liability for error without any corresponding prospect for reward for good work is doomed. Only the addled and the foolhardy would disregard these incentives, and the addled and foolhardy do not execute statutes very well."), *cert. denied,* — U.S. —, 107 S.Ct. 669, 93 L.Ed.2d 721 (1986)

(9th Cir.1981) (holding that FmHA officials had absolute immunity in suit for conspiracy to defraud plaintiffs of their interest in grazing association).

■ Applying the doctrine of absolute immunity to the facts in this case, we hold that the acts for which appellant claims the individual appellees are liable were all committed within the scope of their authority. Appellant accuses appellee Dockins of improprieties stemming from Dockins' evaluation of appellant's loan eligibility, from his evaluation of the productive capabilities of appellant's land, from his representation of appellant's loan prospects to third parties, and from his advice to appellant concerning the disposition of appellant's assets. All of these activities are squarely within the range of duties delegated to Dockins by the Secretary of Agriculture. Those duties "dictate the need for a County Supervisor to constantly interact with private individuals to further the services FmHA provides to the individuals and entities in the Supervisor's geographic area." *Poolman, supra,* 802 F.2d at 309.

■ The other appellees acted completely within the scope of their authority as well. Appellee Kent reviewed appellant's applications, and met with appellant concerning the loan denials. Both chores are among Kent's basic responsibilities as FmHA District Director. There are no allegations that any of the other individual appellees committed any particular acts, within or without the scope of their authority, so there is no cause for a finding that they are not completely shielded by the doctrine of absolute immunity.

■ To qualify as officials for absolute immunity, *Williams v. Collins, supra,* required both that the actions of the officials be within the bounds of their authority and that they be related to a discretionary function. The latter requirement has recently come under some criticism. *See, e.g., Pool-*

*man, supra,* 802 F.2d at 308.[15] We need not address the relative merits of the one-factor versus the two-factor immunity test since we have found that the acts in question in this case were authorized discretionary acts. In *Currie v. Guthrie,* 749 F.2d 185 (5th Cir.1984), we held that "[a] public official's action will be considered 'discretionary' if it is 'the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexatious or fictitious suits and alleged personal liability.'" 749 F.2d at 188, *quoting Norton v. McShane,* 332 F.2d 855, 859 (5th Cir.1964), *cert. denied,* 380 U.S. 981, 85 S.Ct. 1345, 14 L.Ed.2d 274 (1965). Decisions regarding the eligibility of farmers for FmHA loans are decision that require such freedom.

Because appellees' acts were within the bounds of their authority, and because their acts were connected with discretionary functions, we affirm the granting of summary judgment in favor of the individual appellees in their individual capacities.

## V. *Constitutional Claims*

■ In his pursuit of a checklist of all possible theories of recovery, appellant claims that he is the victim of unconstitutional as well as common-law tortious activity by FmHA officials. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized "that victims of a constitutional violation by a federal agent have an implied right of action to recover damages against the official absent any statute conferring such a right." *Hessbrook v. Lennon,* 777 F.2d 999, 1001 (5th Cir.1985) (citation omitted). This implied right of action only applies against the individual appellees in their individual capacities. The United States and its officers in pursuit of their official duties remain protected by sovereign immunity. *Holloman v.*

---

**15.** "We recognize that some circuit courts have adopted the discretionary function requirement as an element in determining whether a federal official is immune from a common law tort cause of action.... Yet, we feel *Barr* indicates that by allowing the degree of discretion embod-

ied in a particular function to remain a factor—as opposed to requiring bright-line distinctions between discretionary and ministerial acts—courts can better resolve [the immunity dilemma]." *Poolman, supra,* 802 F.2d at 308.

*Watt,* 708 F.2d 1399, 1401–02 (9th Cir. 1983), *cert. denied,* 466 U.S. 958, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984); *Hampton v. United States,* 575 F.Supp. 1180, 1183 (W.D.Ark.1983).

Appellant claims that FmHA officials deprived him of his property without due process of law by interfering with his contracts with his landlord, by interfering with his application for a loan from another federal agency, and by confiscating crop proceeds in which FmHA had no interest. The district court found that appellant "has not established that Defendants' actions rise to the level of constitutional violations, particularly in light of the nature of the federal programs involved and the substantial discretion committed to those administering them." *Williamson, supra* 635 F.Supp. at 117. Thus, the court found that appellant failed to make out a colorable *Bivens* claim.

■■■ Appellees in any event claim that they are shielded from liability for appellant's accusations by the doctrine of qualified immunity. Federal officials performing discretionary tasks enjoy qualified immunity from suits for constitutional violations to the extent that their conduct does not violate clearly established law. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald, supra.*

■■■ In *Bass v. United States Dept. of Agriculture,* 737 F.2d 1408 (5th Cir.), *reh'g denied,* 742 F.2d 1453 (1984), we addressed the heightened pleading requirement necessary to sustain a *Bivens* allegation in an administrative context:

What [the plaintiff's] contention does not face is that if his view were to prevail, every case involving a discretionary administrative decision would automatically become a constitutional case merely by allegation that the law was otherwise than the decision reached. Yet the entire issue in the judicial review of administra-

tive action always is whether the administrative decision was erroneous. The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. Mere failure to make the "correct" administrative decision does not rise to the level of a constitutional violation.

737 F.2d at 1415. Appellant has *alleged* with no other support an intentional deprivation of his constitutional rights by FmHA. But *Bass* should not be interpreted as rejecting as inadequate mere allegations that "the law is otherwise," only to accept as adequate mere allegations that "the violation was intentional."

The extensive record, beyond the pleadings, shows no evidence that any violation of law committed by FmHA personnel was intentional or with reckless disregard of constitutional rights.[16] The record contains 107 pages of explanation by appellees of their actions concerning appellant during the relevant time span.[17] These documents conclusively demonstrate that FmHA officials acted at all times within the bounds of their authority, and in good faith that their actions were completely within the law. Appellant's affidavit, largely a repetition of his complaint, fails to put into serious dispute the motivation of appellees. *Cf. Barnstone v. McKeever,* 477 F.Supp. 108, 112 (S.D.Tex.1979) ("Nothing factual has been offered by the Plaintiff to support his bare allegations of harassment.").

In these circumstances, courts have not hesitated to dismiss claims of constitutional violations. *See, e.g., Bass v. United States Dept. of Agriculture, supra; Citizens Savings v. Califano,* 480 F.Supp. 843 (D.C. D.C.1979); *Barnstone v. McKeever, supra.* We hold that the district court was correct in doing so in this case.

---

**16.** We defer, for the moment, appellant's complaint that he was not allowed to develop the record sufficiently since discovery was stayed. We address this argument *infra.*

**17.** Appellee Dockins filed a 42–page affidavit accompanied by 38 pages of documentation concerning FmHA's financial relationship with appellant. Appellee Kent filed a 12–page affidavit accompanied by 15 pages of documentation concerning the same.

In any event, the record also shows that the government officials, acting in their individual capacities, were entitled to the protection of qualified immunity. They demonstrated that their actions were taken within the scope of their authority. Appellant did not counter with a showing that their actions violated clearly established law. *See Harlow, supra,* 457 U.S. at 818, 102 S.Ct. 2738; *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.1982), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1983). *Cf. Baddour, Inc. v. United States,* 614 F.Supp. 159 (N.D.Miss.1985).

Because appellant failed to meet the heightened pleading requirement necessary to sustain a *Bivens* action, and also because appellees demonstrated their entitlement to the protection of qualified immunity, we affirm the judgment of the district court dismissing appellant's *Bivens* claims against the individual appellees in their individual capacities.

## VI. *Discovery*

Having affirmed the dismissal of all of appellant's substantive claims against appellees, we now turn to the two points of appeal raised by appellant relating to the district court's conduct of the proceedings. Appellant's first complaint is that the district court abused its discretion in staying discovery pending resolution of the government's Motion to Dismiss. That motion was converted into a motion for summary judgment upon the submission to the district court of affidavits and other matters outside the pleadings. *See Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). Thus, when the district court ultimately granted the motion for summary judgment, appellant had not had any opportunity to conduct discovery.

■ It hardly bears repeating that control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable. *Mayo v. Tri-Bell Industries,* 787 F.2d 1007, 1012 (5th Cir.1986). Generally, a ruling that denies a party an adequate opportuni-

ty to discover facts to oppose a motion for summary judgment is unreasonable if summary judgment is subsequently entered against that party. *Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 548 (5th Cir.1980), *reh'g denied,* 642 F.2d 1210, *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981). On the other hand, "a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by plaintiff to withstand a Rule 56(e) motion for summary judgment." *Paul Kadair, Inc. v. Sony Corp. of America,* 694 F.2d 1017, 1029–30 (5th Cir.1983).

In the particular context of claims against the United States and federal officials, particular considerations weigh heavily. In *Harlow v. Fitzgerald, supra,* the Supreme Court noted that the protection afforded government officials by the doctrines of absolute and qualified immunity would be greatly depreciated if it did not include protection from discovery. 475 U.S. at 816–18, 102 S.Ct. at 2737–38. The Court specifically referred to *Halperin v. Kissinger,* 606 F.2d 1192 (D.C.Cir.1979), *aff'd in pertinent part,* 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981), for the proposition that close control of discovery is essential to the preservation of meaningful official immunity. 475 U.S. at 818, n. 29, 102 S.Ct. at 2738, n. 29. *Halperin* noted that uncontrolled discovery in the course of insubstantial lawsuits constitutes a form of harassment imposing an undue burden on public officials and government agencies. 606 F.2d at 1209. *See also Chagnon v. Bell,* 642 F.2d 1248, 1265–66 (D.C.Cir.1980) (rejecting claim of abuse of discretion based on stay of discovery in case against federal officials), *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981). For all these reasons, the Supreme Court advised that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow, supra,* 475 U.S. at 818, 102 S.Ct. at 2738.

■ The doctrines of absolute and qualified immunity both apply to various as-

pects of this case, and, together with the doctrine of sovereign immunity, they completely shield appellees from liability for the alleged misdeeds charged. Congress' intent to shield appellees Dockins, Kent, and their supervisors from harassment and the substantial distractions of suit would be circumvented if appellant were allowed to inspect their files and their desks. The district court acted properly in staying discovery in this case pending resolution of the immunity issues. Thus we reject appellant's claim of abuse of discretion.

### VII. *Affidavits*

Appellant's final claim is that the district court erred in considering inadmissible evidence contained in the affidavits and documents provided by appellees. It is true that Rule 56 requires that affidavits be made on personal knowledge, and that they set out only facts that would be admissible in evidence. Fed.R.Civ.P. 56(e). It is also true that those portions of affidavits that do not comply with these requirements are entitled to no weight. *Pan-Islamic Trade Corp. v. Exxon Corp., supra,* 632 F.2d at 556.

As an initial response to this claim, we note that appellant made no motion in the trial court to strike those portions of the affidavits not admissible as evidence. To reverse the district court's judgment at this stage on grounds unobjected to below would allow a party to "sandbag the [district] court ..., selectively opposing the points [it] chose, and on appeal claiming that the unopposed points were defectively presented and required no response." *In re Teltronics Services,* 762 F.2d 185, 192 (2nd Cir.1985) (rejecting arguments that summary judgment was impermissibly based on affidavits containing inadmissible evidence). We agree with the reasoning of *Teltronics,* and reject appellant's claim on the basis of his failure to object to the admission of the affidavits in the district court.

In any event, it is well settled that "on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of

or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motions." *Lee v. National Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980), *reh'g denied,* 635 F.2d 516 (1981). *See also Prudential Ins. Co. v. Curt Bullock Builders,* 626 F.Supp. 159, 164 (N.D.Ill.1985). In the total absence of a showing otherwise, we find that the district court did not improperly consider inadmissible portions of appellees' affidavits. We thus reject appellant's final claim that the admission of the affidavits constitutes reversible error.

### *Conclusion*

All of appellant's allegations against the United States, its agencies and its officers were properly dismissed in deference to legal implementation of the principle that government officials need room in which to exercise the discretion bestowed upon them by Congress. Congress limited its waiver of sovereign immunity under the Federal Tort Claims Act in pursuit of this objective. Common law and constitutional claims against government officials are subject to absolute and qualified immunity further to implement this objective. The record is detailed and adequate enough to show that this farmer-businessman fell into deeper and deeper financial difficulty in spite of extensive loans by the federal government. When the collapse came, the attempt is made to blame the government for not going further. Sympathy for appellant's plight cannot overcome the discretionary nature of the federal program. The summary judgment of the district court in favor of appellees must be affirmed.

AFFIRMED.